**EQUALITY BANK OF EVANSVILLE, WYOMING, f/d/b/a Jeffrey City State Bank, Appellant (Plaintiff),**

v.

**Dale SUOMI; Rebecca Suomi, a/k/a Becky Suomi, Appellees (Defendants).**

**Dale SUOMI and Rebecca Suomi, Appellants (Defendants),**

v.

**EQUALITY BANK OF EVANSVILLE, WYOMING, f/d/b/a Jeffrey City State Bank, Appellee (Plaintiff).**

Nos. 91-195, 91-196.

Supreme Court of Wyoming.

Aug. 18, 1992.

William D. Bagley, Cheyenne, for appellant.

Sky D Phifer, Lander, for appellees.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and ROONEY, J., (Retired).

GOLDEN, Justice.

The Equality Bank of Evansville, Wyoming, f/d/b/a Jeffrey City State Bank (Bank), filed a deficiency action against Dale and Rebecca Suomi (Suomis) after the sale of a mobile home in which the Bank held a security interest. The Suomis denied liability in their answer and counterclaimed for damages. The Bank and the Suomis moved for summary judgment on the complaint. The Suomis moved for summary judgment on their counterclaims. The district court granted summary judgment to the Suomis on the Bank's complaint, dismissing the deficiency action because the Suomis were not given adequate notice of sale. The district court denied the Suomis' motion for summary judgment on their counterclaims because of an inadequately developed record. In appeal No. 91–195, the Bank appeals the summary judgment granted to the Suomis on the deficiency action. In appeal No. 91–196, the Suomis appeal the denial of their motion for summary judgment on their coun-

terclaims. We will affirm appeal No. 91–195 and dismiss appeal No. 91–196.

## ISSUES

The dispositive issues for the purpose of these appeals are:

(1) Whether the Bank presented evidence in its motion for summary judgment sufficient to create an issue of material fact regarding its right to bring a deficiency action against the Suomis.

(2) Whether the Suomis may appeal the district court's denial of their motion for summary judgment on their counterclaims for damages.

## FACTS

On June 18, 1979, Richard and Patty Burrus (Burruses) executed a promissory note to the Bank to obtain financing to buy a new mobile home. Under the terms of the promissory note, the Burruses agreed to pay the Bank 120 monthly installments of $290.71, totaling $34,885.20. The payments reflected a principal amount of $17,-575 financed at 15.65 percent interest for ten years. As security for the promissory note, the Burruses signed a security agreement/financing statement with the Bank, pledging the mobile home as collateral. The Bank duly perfected its purchase money security interest in the mobile home.

On July 24, 1980, the Burruses entered into a buy-sell agreement with the Suomis concerning the mobile home. The buy-sell agreement was expressly conditioned upon the Bank's approval. As stated consideration for the sale, the buy-sell agreement obligated the Suomis to pay the Burruses $500 and to either refinance or assume the mobile home loan. In an attempt to refinance the loan, the Suomis submitted a loan application to the Bank. The Bank denied the Suomis' loan application on October 10, 1980.

The Suomis occupied the mobile home for approximately one-and one-half years following the execution of the buy-sell agreement. It is not clear from the record or briefs whether the Suomis made payments during this period of time to the Bank or to the Burruses. The Suomis were, however, obligated to make the payments directly to the Bank under the terms of the buy-sell agreement. Nevertheless, the Suomis, in an attempt to wrap up their affairs in Wyoming before returning to Florida, entered into an agreement on February 21, 1982, to sell the mobile home to Mike and Lori Warren (Warrens). Under this agreement, the Warrens agreed to refinance the outstanding balance due on the Burrus' promissory note as consideration for the sale. The Bank subsequently represented to the Suomis that the Warrens' refinancing application had been approved and requested from the Suomis a "Release of Title" and "Power of Attorney" to consummate the transaction. The Suomis executed the requested documents on November 5, 1982, and December 22, 1982, respectively, and forwarded them to the Bank.

On March 1, 1983, the Bank, not having consummated the Warren sale, sent a "notice letter" to the Suomis. The notice letter provided in relevant part:

> Be advised by this writing, as of this day March 1, 1983, the Jeffrey City State Bank has repossessed your 1979 Chateau Mobile Home used as security on loan number 20–12706 at this Bank.
>
> You are hereby notified you have until March 18, 1983 to pay the balance of this note, $15,111.36 in full, or this bank will sell the mobile home to the highest bidder and you will be liable for any deficiency.

The Suomis apparently failed to respond to the notice letter. The Bank thereafter sold the mobile home for $7,509, leaving an unpaid balance of $8,676.13 upon which interest accrued at the rate of $3.72/day.

On March 10, 1990, the Bank filed a deficiency action against the Burruses and the Suomis, seeking to recover the unpaid balance on the promissory note, together with accrued interest, attorneys fees, and costs. The Suomis were appropriately served with process; the Burruses were never located. The Suomis answered the Bank's complaint by denying any obligation on the promissory note executed by the Burruses and by counterclaiming for dam-

ages based on allegations of wrongful repossession and breach of fiduciary duty. Specifically, the Suomis contended that the March 1, 1983 notice letter did not comply with the requirements of Wyo.Stat. § 34–21–963 (recodified at § 34.1–9–504 (June 1991)), foreclosing the deficiency action and entitling them to damages under Wyo.Stat. § 34–21–966 (recodified at § 34.1–9–507 (June 1991)). The Suomis also asserted that they were entitled to damages because the Bank breached its fiduciary obligation to ·complete the Warren sale.

The Bank and the Suomis moved for summary judgment on the complaint. The Suomis moved for summary judgment on their counterclaims. The district court granted summary judgment to the Suomis on the deficiency action, dismissing the Bank's complaint because the Suomis were not given adequate notice of sale. The district court denied the Suomis' motion of summary judgment on their counterclaims because of an inadequately developed record. The Bank appeals the summary judgment granted to the Suomis on the deficiency action. The Suomis appeal the denial of their motion for summary judgment on their counterclaims.

## STANDARD OF REVIEW

■ When reviewing the propriety of a summary judgment, this court examines the record from the vantage point most favorable to the party opposing summary judgment to determine whether there exists a genuine issue of material fact to preclude disposition of the case as a matter of law. A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element to the cause of action or defense asserted by the parties. If upon such review no genuine issue of material fact is found to exist, we will uphold a summary judgment under any legal theory properly supported by the record. *Century Ready–Mix v. Campbell Co.*, 816 P.2d 795, 798–99 (Wyo.1991).

## DISCUSSION

1. *Appeal No. 91–195*

The Bank appeals from the district court's order which granted to the Suomis their motion for summary judgment to dismiss its complaint for a deficiency judgment. The Bank specifically takes issue with the district court's determination that the notice of sale given to the Suomis was deficient as a matter of law. The Suomis counter that the Bank failed to present evidence in its motion for summary judgment sufficient to create an issue of material fact regarding its right to bring a deficiency action against the Suomis. The Suomis argue alternatively that the district court was correct in determining that the notice of sale was legally deficient. We find the issue raised by the Suomis concerning the adequacy of the Bank's motion for summary judgment to be dispositive for the purpose of this appeal. Accordingly, we address only that issue.

■ The Bank's right to maintain a deficiency action against the Suomis hinges, at the most fundamental level, upon the validity of the Suomi–Burrus buy-sell agreement. The essence of the Bank's position is that it is an intended third-party beneficiary to the agreement. Our objective, then, is to examine the motions for summary judgment filed by the parties to determine whether a genuine issue of material fact was raised concerning the validity of the buy-sell agreement. That both parties filed motions for summary judgment does not mean no genuine issue of material fact exists. Such a determination remains a question of law for the court. *Seay v. Vialpando*, 567 P.2d 285, 287 (Wyo.1977).

■ The Bank was the first to file a motion for summary judgment on its complaint. This motion was supported by the affidavit of Darrell Satterfield, an officer of the Bank. In his affidavit, Mr. Satterfield stated the facts alleged to be central to the Bank's cause of action against the Suomis. They included: (1) that the Burruses executed and delivered to the Bank a promissory note on June 18, 1979; (2) that the Suomis assumed the Burruses' obligation on the promissory note via the buy-sell agreement on July 24, 1980; (3) that

the promissory note was in default; (4) that due notice of repossession was given to the Suomis on March 5, 1983; (5) that the mobile home was sold on November 4, 1973, for $7,509, leaving a deficiency of $8,676.13; and (6) that the Suomis have failed to satisfy the unpaid balance upon demand. Attached as supporting documentation were copies of the Burruses' promissory note, the Suomi–Burrus buy-sell agreement, notice of repossession, and receipt of notice.

The Suomis responded with a cross-motion for summary judgment on the complaint. This motion was supported by the affidavits of Dale Suomi and Rebecca Suomi. In their affidavits, the Suomis both stated that they never assumed, guaranteed, or otherwise agreed to be responsible for the Burruses' promissory note. Attached as supporting documentation was a copy of a "Statement of Credit Denial, Termination, or Change" sent to the Suomis by the Bank on October 10, 1980 in response to the Suomis' attempt to refinance the purchase of the mobile home. Each party relied upon its respective motion for summary judgment to oppose the motion of the other party.

On appeal, the Suomis contend that the affidavit of Darrell Satterfield, along with attached exhibits, failed to raise an issue of material fact regarding the Bank's right to maintain a deficiency action against the Suomis. Specifically, the Suomis contend that Mr. Satterfield's affidavit was not made on personal knowledge. For support of their contention, the Suomis cite Rule 56(e) of the Wyoming Rules of Civil Procedure. The rule provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

A review of Mr. Satterfield's affidavit discloses that he is an officer of Equality Bank of Evansville. There is no indication in Mr. Satterfield's affidavit that he possesses any independent, personal knowledge of the events that occurred some eight years earlier at Jeffrey City State Bank. Any knowledge that Mr. Satterfield has of events central to this case apparently came from his review of the loan file. Consequently, we examine the documents submitted in support of Mr. Satterfield's affidavit to see if they raise a genuine issue of material fact concerning the Bank's right to maintain a deficiency action against the Suomis.

The first document submitted in support of Mr. Satterfield's affidavit was a copy of the Burruses' promissory note. This note was signed by only Richard and Patricia Burrus. Standing alone, this note fails to raise a genuine issue of material fact concerning the Bank's right to maintain a deficiency action against the Suomis. Wyo. Stat. § 34.1–3–401(a) (June 1991) provides that "A person is not liable on an instrument unless (1) the person signed the instrument, or (2) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under section 34.1–3–402." There is absolutely no evidence that the Burruses were acting as agents of the Suomis at the time the note was executed.

The second document submitted in support of Mr. Satterfield's affidavit was a copy of the Suomi–Burrus buy-sell agreement. Paragraph 1 of this agreement provides, in relevant part, "This agreement is conditional upon approval of the Jeffrey City State Bank." Paragraph 3 provides, in relevant part, "Buyers [Suomis] shall assume or refinance the present indebtedness on said home to the Jeffrey City State Bank." This document, even when coupled with the Burruses' promissory note, also fails to raise a genuine issue of material fact concerning the Bank's right to maintain a deficiency action against the Suomis. The Bank did not submit any evidence that it had approved the Suomi–Burrus buy-sell agreement. Rather, the only evidence submitted concerning the Bank's actions in this regard was a copy of the "Statement of Credit Denial, Termination, or Change" sent to the Suomis in October of 1980.

The third and fourth documents submitted in support of Mr. Satterfield's affidavit—the notice of sale and receipt—have no bearing upon the foundational question presently under consideration. Consequently, they will not be discussed.

We are left, then, with the following state of affairs: The Suomis moved for summary judgment on the Bank's complaint. The Suomis' position was that the Bank had no right to maintain a deficiency action against them. In support of their position, the Suomis submitted affidavits of Dale and Rebecca Suomi. These affidavits were made on personal knowledge and concerned matters upon which the Suomis were competent to testify. The Suomis stated by affidavit that they never assumed, guaranteed, or otherwise agreed to become responsible for the Burruses' debt. Supporting the Suomis' statements was a copy of the Bank's "Statement of Credit Denial, Termination or Change." The Bank relied upon its original motion for summary judgment to oppose that of the Suomis. The Bank's only evidence in opposition to the Suomis' denial of liability was a copy of the Suomi–Burrus buy-sell agreement. However, this agreement was expressly conditional upon the Bank's approval. The Bank submitted no evidence that it had approved the agreement.

Rule 56(e) provides that, when opposing a motion for summary judgment properly supported by affidavit, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." We have explained that the evidence that is relied upon to sustain or defeat a motion for summary judgment must be such as would be admissible at trial and that it should be as carefully tailored and professionally correct as any evidence which would be presented to the court at the time of trial. *Gennings v. First Nat. Bank of Thermopolis*, 654 P.2d 154, 155 (Wyo.1982); and *Newton v. Hunter*, 423 P.2d 648, 650 (Wyo.1967). Given the state of the evidence in the instant case, we are constrained to conclude that the Bank failed to

meet its burden of demonstrating specific facts by competent evidence sufficient to create a genuine issue of material fact concerning its right to maintain a deficiency action against the Suomis. Accordingly, we hold that, on this record, the Suomis were not legally responsible to pay the Bank any outstanding deficiency on the Burruses' promissory note. We uphold the summary judgment granted by the district court to the Suomis, albeit on different grounds.

## 2. *Appeal No. 91–196*

■ The Suomis appeal from the district court's order which denied their motion for summary judgment on the counterclaims for wrongful repossession and breach of fiduciary duty. The Suomis' counterclaims fall, however, in light of our holding that the Suomis were not obligated to the Bank on the mobile home. We note also that the right to appeal does not lie from a denial of a motion for summary judgment, as such is not a final order. *E.g., J Bar H, Inc. v. Johnson*, 822 P.2d 849, 859 (Wyo.1991). Accordingly, we dismiss appeal No. 91–196.

## DISPOSITION

The judgment and order of the district court which granted to the Suomis their motion for summary judgment on the Bank's complaint is affirmed. The Suomis' appeal from the district court's denial of their motion for summary judgment on their counterclaims is dismissed.

ROONEY, J., Retired, filed a dissenting opinion.

ROONEY, Justice (Retired), dissenting.

### I. MAJORITY OPINION

I seem to have a blind spot in this case since I am unable to find logic in the majority opinion. It addresses only the motion for Summary Judgment of the Bank of Evansville, Wyoming f/d/a Jeffrey City State Bank (Bank), plaintiff below, and finds that "the Bank failed to meet its burden of demonstrating specific facts by competent evidence sufficient to create a

genuine issue of material fact concerning its right to maintain a deficiency action against the Suomis." The Bank should not want "to create an issue of material fact" in its motion for summary judgment. It should want to show to the contrary, i.e., that there is *not* a genuine issue as to any material fact. That showing, together with a showing that it is entitled to a judgment as a matter of law is sufficient for a grant of the requested judgment. *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990); *Robinson v. Bell*, 767 P.2d 177 (Wyo.1989).

The facts in this case are not controverted. They are set forth in the majority opinion and also hereinafter in the section captioned "Proposed Opinion." There is not here a disagreement between the parties concerning the facts of this case. That is evidenced by both parties so stating in their separate Motions for Summary Judgment. As noted in the majority opinion, the fact that both parties moved for summary judgment does not prevent the court from recognizing *the existence* of a genuine issue of a material fact, *Seay v. Vialpando*, 567 P.2d 285 (Wyo.1977), but the dual motions are to be considered by the court in its determination of the existence or lack of existence thereof. W.R.C.P. 56(c) provides in pertinent part:

"The judgment sought shall be rendered forthwith if *the pleadings*, depositions, answers to interrogatories and *admissions on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.)

Certainly, the fact that both parties moved for a summary judgment evidenced the assumption by them that there was no disagreement concerning the material facts in this case, nor did they argue such on appeal.

There is a disagreement between the parties as to whether or not Dale Suomi and Becky Suomi (Suomis) can be held responsible for payment of the note of Richard Burrus a/k/a Rick Burrus and Patricia D. Burrus (Burrus) to the Bank, but this disagreement is not one of fact. It is a disagreement on whether or not the responsibility is imposed by law. *Under the facts of this case*, I would hold that it is.

## II. EQUITY

If the Bank loans money to Burrus secured by a recorded chattel mortgage (security agreement) on a mobile home, and Burrus sells the vehicle to Suomis, it is lawful for the Bank to repossess and sell the vehicle upon the failure of full payment according to the terms of the note and of the mortgage. Such repossession was done here, and it does not pertain to the issue before us. The issue before us results from an effort by the Bank to hold Suomis responsible for the deficiency resulting from the sale.

Suomis knew of the mortgage obligation. The sale of the vehicle by Burrus to Suomis was conditioned upon approval by the Bank. The approval was not given, but Burrus and Suomis consummated the transaction anyway. Burrus could not give clear title to the vehicle until the lien on it was removed. Suomis knew this, but they had possession and use of the vehicle. They were beneficiaries of the financing by the Bank to this extent.

Burrus had the money paid by the Suomis for the vehicle, and he had the prior use of it. He could be content as long as he could either conceal his whereabouts and not be called upon to pay the Bank loan, or (if so called upon) as long as he could proceed against Suomis under an agreement with them, if there was one, whereby Suomis agreed to pay the loan.

The Bank, however, was the loser in the transaction. The loan to Burrus was not repaid. The sale of the security for the loan did not satisfy the balance due on the loan. Burrus had disappeared. If the Bank could not collect the deficiency from Suomis, it will have to suffer the loss. It, and other banks with knowledge of the result reached here, would probably require larger down payments in the future before making loans on the security of vehicles in order to avoid inability to collect deficiencies on repossessions, all to the det-

riment of those seeking loans, and all for the purpose of avoiding scams by individuals arranging the sequence of events as here occurred.

Suomis had knowledge of the Bank's interest in the vehicle. Not only does Wyo. Stat. § 31–2–104 (1989) require endorsement of the security on the title to the vehicle, but Suomis agreed in the buy/sell agreement with Burrus to assume the loan or refinance it. If it was assumed, Suomis would be contractually obligated for the full amount of the loan, including any deficiency after sale of the vehicle upon default. If it was refinanced, the Bank loan to Burrus would be paid in full, and Suomis would be contractually obligated for the full amount (including deficiency if the vehicle had to be sold for less than the amount due upon default) to the entity refinancing the loan.[1] In either case, Burrus would no longer be obligated to the Bank. The title to the vehicle would so reflect.

Suomis did not contractually assume the loan with the Bank—although they tried to do so, and they did not refinance the loan. *But such requirements in the buy/sell agreement reflected the intention of Burrus and of Suomis to have the Bank loan be an obligation of Suomis for payment in full*—including any deficiency after sale of the security. The Bank was a third-party beneficiary of the buy/sell agreement.

The effect of the third-party beneficiary doctrine is to establish a duty to, and a priority in, a third party to a contract by operation of law. It allows a stranger to a contract to enforce the obligation. The test is whether the parties to a contract intend or contemplate that the third party shall be benefitted. *Wyoming Machinery Company v. United States Fidelity and Guaranty Company*, 614 P.2d 716 (Wyo. 1980); *Peters Grazing Association v. Legerski*, 544 P.2d 449 (Wyo.1975); Restatement (Second) of Contracts, §§ 135–43 (1981). In this instance, Suomis and Burrus intended the Bank to be benefitted by full payment of the outstanding loan secured by the vehicle through Suomis' assumption or through Suomis' refinancing of the outstanding loan with the Bank. *The institution of this action by the Bank evidenced its agreement to be so benefitted.*

### III. PROPOSED OPINION

The majority opinion finds it unnecessary to address all of the issues raised in this appeal since its holding on the issue addressed is dispositive of the other issues. My disagreement with the majority of the court on the issue addressed by it makes it necessary to determine if I would join the *result* reached by the majority of the court (affirm Appeal No. 91–195 and dismiss Appeal No. 91–196) upon consideration of the other issues. Upon consideration of such issues, I would reverse the denial of the Bank's motion for summary judgment and the granting of Suomis' motion for summary judgment in Case No. 91–195 and affirm the grant of Bank's motion for summary judgment and the denial of Suomis' motion for summary judgment in Case No. 91–196, and I would remand the case for entry of judgment accordingly. Following are my reasons for doing so:

The Bank's appeal is from the denial of its motion for summary judgment[2] and granting the motion for summary judgment of Suomis on Bank's action for deficiency judgment after a sale of the property securing a loan, the ruling being on the ground that there was an insufficient no-

---

1. The Bank agreed to transfer title to Warrens under a power of attorney given to it by Suomis for such purpose, all in anticipation of an assumption of the debt to Bank by Warrens or upon refinancing of the loan.

2. A denial of a motion for summary judgment is not always appealable. *See Collins v. Memorial Hospital of Sheridan County*, 521 P.2d 1339 (Wyo.1974) and *Kimbley v. City of Green River*, 663 P.2d 871 (Wyo.1983). In this case, both parties moved for a summary judgment. The grant of one would be a denial of the other. Both parties appealed. Whether or not the appeal of the denial was proper is, therefore, irrelevant. The determination of the merits of the case by the district court as proper or improper is before us whether or not the denial of motions for summary judgment are appealable.

tice of the sale (Case No. 91–195). Suomis appeal from the grant of a summary judgment against them on their counterclaim for damages allegedly occasioned by the insufficient notice, and on their counterclaim for damages resulting from an alleged breach of a fiduciary duty (Case No. 91–196).

I would reverse the denial of the Bank's motion for summary judgment and the granting of Soumis' motion for summary judgment in Case No. 91–195; affirm the grant of Bank's motion for summary judgment and the denial of Soumis' motion for summary judgment in Case No. 91–196; and remand for entry of judgment accordingly.

Bank brought this action in the district court against Suomis and against Burrus.[3] The note was secured by a 1979 Chateau Mobile Home and was given to obtain financing for the purchase of it. On July 24, 1980, Burrus and Suomis had entered into an agreement for sale by Burrus and purchase by Suomis of the mobile home. It provided in part:

"The parties understand that this agreement is conditional upon the approval of the Jeffrey City State Bank.

\*      \*      \*      \*      \*      \*

"(a) Buyers shall *assume* or refinance the present indebtedness on said home to the Jeffrey City State Bank. Buyers shall be responsible for all late fees and penalties occasionned [sic] by their late payment. Buyers understand this obligation might remain in Sellers' name and that continued delinquency shall injure Sellers' credit and may be the basis for Sellers declaring a default herein[.]" (Emphasis added.)

Suomis made the required payments until 1982 when they agreed to sell the mobile home to Mike and Lori Warren. The Warrens agreed to refinance the loan with the Bank, but the Bank refused to accept the Warrens as debtors in place of Suomis. After payment defaults, the Bank repossessed the mobile home. On March 1,

1983, the president of the Bank sent the following notice to Suomi:

"Be advised by this writing, as of this day March 1, 1983, the Jeffrey City State Bank has repossessed your 1979 Chateau Mobile Home used as security on loan number 20–12706 at this Bank.

"You are hereby notified you have until March 18th, 1983 to pay the balance of this note, $15,111.36 plus repairs and rent costs of $250.00 for a total of $15,362.36 in full, or this bank will sell the mobile home to the highest bidder and you will be liable for any deficiency.

"Please contact me with any questions you may have regarding the above situation."

The Bank was not contacted, and the sale was made. This action was then instituted to collect the deficiency plus interest, fees, costs and expenses.

In their answer, Suomis alleged, among other things, that they were not liable to Bank inasmuch as the notice of sale of the mobile home was incomplete. They counterclaimed (1) on the same basis, i.e., the notice failed to indicate whether the sale was to be private or public; the time and place of the sale, if it were to be a public one; or the time of the private sale, if it were to be a private one; all alleged to be contrary to Wyo.Stat. § 34–21–966 (1977), wherefore, they were damaged, and (2) for an alleged breach of fiduciary duty to them in failing to finance the Warrens' purchase of the mobile home, wherefore they were damaged.

### Case No. 91–195

Bank words the issues on appeal in this case:

"Was the notice given by the bank March 1, 1983 and received by Dale Suomi for Dale and Rebecca Suomi March 5, 1983 inadequate as a matter of law under the provisions of W.S. § 34.1–9–504(c)?

"If notice is found to be not in accordance with the notice provision of W.S.

---

**3.** Service on Burrus was not accomplished. Attempted service on Becky Suomi by registered mail was returned as "unclaimed," but Becky Suomi appears in the action by joining Dale Suomi in an answer and counterclaim.

34.1-9-504(c), then what are the options and considerations facing the parties and the courts?"

Suomis word them:

"1. Did the Bank present any evidence to oppose Defendants' Motion For Summary Judgment to dismiss Plaintiff's Complaint?

"2. Was the Notice of repossession and foreclosure sent pursuant to W.S. § 34.1-9-504 defective as a matter of law?

"3. Is the Bank entitled to set-off the amount of the deficiency from the amount due Defendants pursuant to W.S. § 34.1-9-507?"

## A. SUFFICIENCY OF THE NOTICE OF SALE

(Bank's first issue, Soumis' second issue)

In its Judgment Amending Order on Motions for Summary Judgment, the district court held that Suomis were entitled to judgment inasmuch as "Plaintiff failed to give adequate notice to Dale and Rebecca Suomi pursuant to the provisions of W.S. 34.1-9-504(c) (1990 recodification)."

Wyo.Stat. § 34.1-9-504(c) provides in pertinent part:

"Disposition of the collateral may be by public or private proceedings * * * but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. * * * [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor[.] * * * In the case of consumer goods no other notification need be sent. * * * * "

The question, then, is whether or not the March 1, 1983 letter from the Bank gave Suomis "reasonable notice" of the intended disposition of the secured property. The official comments by the authors of the Uniform Commercial Code include:

" 'Reasonable notification' is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire."

Wyo.Stat. § 34.1-9-504, Official Comment.

The notice here was mailed eighteen days before the contemplated sale or disposition of the mobile home—sufficient time to take the steps referred to in the Official Comments to the Code. It also reflected the fact of repossession and the status of the debt, and it invited any question concerning the "situation." The invitation was not accepted, and Suomis took no steps to protect their interests.

Suomis refer to *Aimonetto v. Keepes*, 501 P.2d 1017 (Wyo.1972), as authority for the notice required to have been insufficient. In *Aimonetto*, the debtor pledged a diamond bracelet as security on a note. After a conversation between the parties concerning the necessity for a sale of the bracelet, the creditor sold it. The fact that a sale was actually to be made was not communicated to the debtor (as was done here). He was not allowed a period of time in which to make payment or otherwise protect his interests (as was done here). We held that the trial court erred in finding that there was sufficient "constructive notice" under the statute. The *Aimonetto* case is definitely distinguishable from this case on the facts.

Likewise, the holding in *Stephens v. Sheridan Public Employees Federal Credit Union*, 594 P.2d 473 (Wyo.1979), (referred to by Suomi), that whether or not proper notice of intended sale of collateral was given to the debtors is a question of fact precluding summary judgment, is factually distinguishable from this case. In *Stephens*, the debtor denied receiving any notice as claimed by the creditor—obviously a question of fact. Here the fact of receipt of notice is not questioned. The sufficiency of it is, and such is a question of law.

Suomis contend that the notice "implied" a public sale through the use of the words "highest bidder," wherefore the time and place of such sale were improperly omitted from this notice. *Under the facts of this*

*case,* I do not agree. Wyo. Stat. § 34.1–9–504(c), does not require the notice to specify whether or not the sale is to be "private" or "public." It does require the notice in case of a contemplated public sale to specify "the time and place" for it, and it requires notification "of the time after which any private sale or other intended disposition is to be made." The notice did specify the time after which a sale or other intended disposition would be made—indicating the contemplation of a private sale. It did not set forth a time and place for a public sale—indicating that such was not contemplated. The word "bid" does not necessarily indicate a public sale. It is not uncommon for a canvass to be made of selected potential purchasers for an offer or bid on an item available for sale without presenting the item to the public for bids, especially when the sale is by one (such as a bank) finding it necessary to make a number of such sales.

In this case, Suomis had "reasonable notice" of the contemplated action to be taken by the Bank and of the potential liability for a deficiency. They did not respond to the invitation to question the Bank concerning the "situation." The time between the notice and the intended disposition was sufficient for Suomis to determine the details of the "situation" and to take steps to protect their interests. The notice of sale meets the requirements of the statute.

### B.  PENALTY IF NOTICE WAS INSUFFICIENT

#### (Bank's second issue)

I need not address the propriety of a penalty for an insufficient notice since the notice in this case was sufficient.

### C.  FAILURE TO PRESENT EVIDENCE IN OPPOSITION TO SOUMIS' MOTION FOR SUMMARY JUDGMENT

#### (Soumis' first issue)

This is the issue addressed in the majority opinion and responded to in Sections I and II, *supra.*

### D.  SET–OFF OF DEFICIENCY AGAINST PENALTY FOR SALE OF GOODS WITHOUT PROPER NOTICE

#### (Soumis' third issue)

We need not address the propriety of a set-off against a penalty for sale of goods without proper notice since the notice in this case was proper.

#### Case No. 91–196

Suomis word the issues on appeal in this case:

"1.  Did the trial court error [sic] in failing to grant Summary Judgment on Defendant's Counterclaim for wrongful repossession?

"2.  Did the Trial Court error [sic] in failing to grant Summary Judgment on Defendants' Counterclaim for breach of fiduciary duty?

Bank argues that:

"A.  Appellants are not entitled to summary judgment on their counterclaim for wrongful repossession.

"B.  Appellants are not entitled to summary judgment on their counterclaim for breach of fiduciary duty."

### E.  WRONGFUL REPOSSESSION

#### (First issue of each party)

We need not address the wrongful repossession issue since the repossession in this case was not wrongful. (*See supra.*)

### F.  UNLAWFUL CONVERSION

#### (Second issue of each party)

During Soumis' negotiations with Warrens for sale of the mobile home, the Bank requested and received a power of attorney from Suomis to transfer title to the mobile home. Suomis contend that a fiduciary relationship was thus established between them and the Bank, and that the Bank put itself "in the uncompromising position of having to finalize the loan with the Warrens and transfer title, thereby releasing the Suomis from any further obligations under their agreement with the Burrus'."

The Bank may have had a duty to transfer the title to the Warrens in accordance with Soumis'. direction, and there is no indication that it would not fulfill this trust. However, and as stated by the Bank, the power of attorney did not constitute an "agreement of the parties which would vary the terms of the written documents with respect to this loan, its assumption by appellants, or their obligation to the bank. * * * The fact that it [the Bank] was not able to salvage defendants' sale to yet another party does not cause it to be guarantor of defendants' debt."

The fact that the Bank and Suomis had a relationship of trust relative to the execution of a transfer of title does not, in itself, amount to a commitment by the Bank to loan money to the purchaser of the mobile home. The decision by the Bank to loan money to the Warrens, or not to do so, was separate and apart from a decision by it to transfer title of the mobile home on behalf of Suomis. The refusal of the Bank not to loan money to the Warrens was not a breach of a fiduciary duty owed by it to Suomis.