**Joseph LUCERO, as Sheriff of Fremont County, Wyoming; Joseph Lucero, individually, Appellant (Defendant),**

v.

**Larry M. MATHEWS, Appellee (Plaintiff).**

No. 94–54.

Supreme Court of Wyoming.

Aug. 28, 1995.

Rehearing Denied Sept. 26, 1995.

Hugh Kenny, Senior Assistant Attorney General, for appellant in his individual capacity.

Mark J. White and Jill E. Kucera of White & White, Riverton. Argument presented by Ms. Kucera, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Joseph Lucero appeals from an order and decree denying his motion for summary judgment as a matter of law. The district court found that questions of material fact existed and that Lucero was not entitled to qualified immunity for three causes of actions alleged in appellee Larry Mathews' complaint, to wit: breach of contract, deprivation of property without due process, and

deprivation of first amendment rights. Lucero now appeals.

We affirm.

## I. ISSUES

Lucero presents the following issue and subissues for review:

Did the district court err when it failed to grant summary judgment to Lucero based on immunity?

A. Did Mathews receive the process due under the Constitution?

B. Did Mathews set out a first amendment claim sufficient to overcome Lucero's immunity?

C. Is Lucero, as an individual, immune from suit for breach of contract?

D. Does qualified immunity provide a shield to Lucero?

Mathews restates the issue as:

Whether the district court correctly decided that Appellant Joseph Lucero was not protected by the shield of immunity.

## II. BACKGROUND

Mathews began his employment with the Fremont County Sheriff's Office in 1977. In his tenure, Mathews was promoted from patrol deputy, to investigator, to sergeant, then finally to captain under Sheriff Tim McKinney, Lucero's predecessor. In November 1990, Lucero defeated the incumbent sheriff, Tim McKinney, in the general election for the position of Fremont County Sheriff. During the election, Mathews was an active supporter of incumbent Sheriff McKinney, making posters, handing out leaflets and brochures, making radio spots, and writing letters to the editors of the local newspapers. Once Lucero took office, he eliminated Mathews' position as captain and replaced it with the position of undersheriff. Lucero filled the undersheriff position with one of his loyal supporters, and Mathews was given a position as a patrol deputy.

To put it mildly, Mathews and Lucero and his administration (Undersheriff Coppock and one supervisory sergeant) did not get along from the inception of Lucero taking office as sheriff. The working environment between the two camps was very strained, and there was little or no rapport between them. This resulted in a number of conflicts. Letters and memos went back and forth between the two parties accusing each other of various incidences of misconduct, each party frequently reported on the other, and internal investigations and disciplinary actions ensued.

This turbulent working environment finally reached a breaking point when Undersheriff Jack Coppock recommended to Lucero that Mathews' employment be terminated for Mathews' conduct regarding two cases, the Aragon case and the Dobkins case. A "mini-hearing" was held regarding Coppock's recommendation wherein Lucero determined that Mathews should be terminated. Pursuant to department policy, Mathews requested a termination hearing before the disciplinary board (Board).

The Board limited the scope of the evidentiary hearing to the Aragon and Dobkins cases, reasoning: 1) the only charges of misconduct in the Notice of Dismissal involved the Aragon and Dobkins cases; and 2) any prior disciplinary action or questioned employment activity was already part of Mathews' permanent record and could not be changed by the Board. As a result, Mathews was not allowed to respond to any other allegations of misconduct.

After a two-day hearing, the Board determined that Mathews' performance of duties was deficient and recommended a four-day suspension without pay. Lucero, however, did not accept the Board's recommendation. Lucero issued his own findings of fact, wherein he concluded that based on the Board's finding of inadequate performance by Mathews *and* his prior disciplinary file, termination of Mathews' employment was justified. Lucero terminated Mathews' employment on March 18, 1992.

Mathews filed suit against Lucero, both in his official capacity as Fremont County Sheriff and as an individual, for termination of employment without due process, for breach of contract, and for deprivation of his first amendment rights. The district court denied Lucero's motion for summary judgment, and Lucero now appeals.

## III. STANDARD OF REVIEW

██ While it is generally true that a denial of summary judgment is not a final, appealable order, *Equality Bank v. Suomi,* 836 P.2d 325, 330 (Wyo.1992), this is not the case in the context of qualified immunity. The presence or absence of qualified immunity is generally determined by either a motion to dismiss or a motion for summary judgment, and denial of such a motion is appealable. *Abell v. Dewey,* 870 P.2d 363, 367 (Wyo.1994) (*citing Park County v. Cooney,* 845 P.2d 346, 349 (Wyo.1992), *cert. denied* — U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (holding denial of motion to dismiss based upon qualified immunity is an appealable order); *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (holding denial of summary judgment based upon qualified immunity is an appealable order)); *Johnson v. Jones,* 515 U.S. ——, ——, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995).

██ The presence or absence of qualified immunity presents a question of law which is reviewed on appeal de novo. *Abell,* at 367 (*citing Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.1993)). The appealable issue is a purely legal one: whether the law allegedly violated by the defendant was clearly established at the time of the challenged action or actions. *Mitchell v. Forsyth,* 472 U.S. at 528, 105 S.Ct. at 2816: *see Abell,* 870 P.2d at 367–69.

> [An] appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Johnson v. Jones,* 515 U.S. at ——, 115 S.Ct. at 2156 (*quoting Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816).

Our standard of review, therefore, is only applicable to determining whether the law was clearly established and whether the defendant's conduct was proscribed by such clearly established law without reviewing the merits of the case. This concept of "separability" between the legal question of whether the law was clearly established and the merits of the action was discussed recently by the United States Supreme Court in *Johnson v. Jones.* There the United States Supreme Court held that a defendant entitled to invoke a qualified-immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. *Johnson v. Jones,* 515 U.S. at ——, 115 S.Ct. at 2159. When a district court denies a defendant's summary judgment motion, by definition this means that genuine issues of material fact exist. Pursuant to *Johnson v. Jones,* we will not review the record to determine whether genuine issues of material fact exist, as this has already been determined by the district court and such a determination does not constitute a final, appealable order.

## IV. DISCUSSION

### A. Clearly Established Law

██ Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages when their conduct " *'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "* *Abell v. Dewey,* 870 P.2d at 367 (*citing Park County v. Cooney,* 845 P.2d at 351 (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982))). "In order to find qualified immunity, the objective legal reasonableness of a government official's conduct is assessed in the light of the clearly established statutory or constitutional rights at the time of the action." *Abell,* 870 P.2d at 368–69 (*citing Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39).

The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. * * * It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.* This is not to say that official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Abell,* 870 P.2d at 369 (*quoting Cooney,* 845 P.2d at 351–52 (*quoting Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987))).

We have also stated that a "clearly established right" is

one recognized by either the highest state court in the state where the case arose, a United States Court of Appeals, or the United States Supreme Court. *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir.1988). To this list, we might add those rights expressly provided for by controlling statute or administrative regulation. Moreover, the right need not have been previously recognized in the exact circum-

stances of the given case; a reasonable official is required to "relate established law to analogous factual settings."

*Cooney,* 845 P.2d at 352. Therefore, we must determine, as a matter of law, whether a reasonable public official, in March of 1992, would have understood that a sworn nonprobationary, full-time deputy of a sheriff's department had a constitutionally protected property interest in his employment.

 Property interests in continued public employment are created and defined by independent sources such as state statutory law, regulations or the terms of employment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Most often, finding a legitimate claim of entitlement to public employment requires a definitive interpretation of state law, which is the function of a state supreme court, or, on occasion, the federal district court residing in that state. *Abell,* 870 P.2d at 370.

 In Wyoming, a property interest in continued employment for sworn nonprobationary, full-time deputies of a sheriff's department which employs at least twenty sworn, full-time deputies has been legislatively created and defined as W.S. 18–3–611 (Cum.Supp.1995).

**Sec. 18–3–611. Sheriff's office employees; removal from office; hearings.**

(a) This section applies to sworn nonprobationary, full-time deputies of a sheriff's department which employs at least twenty (20) sworn, full-time deputies. Except as provided by subsection (d) of this section, this section does not apply to any member of the executive staff. As used in this subsection, member of the executive staff means a deputy whose primary duties consist of the management of the department or a subdivision thereof, who regularly exercises discretionary powers as they relate to the employment status of employees and who is directly supervised by the sheriff.

(b) A deputy sheriff shall not be discharged from employment, reduced in rank or suspended without pay except for cause and after notice and opportunity for

a hearing. The hearing and any appeal shall be conducted in accordance with the Wyoming Administrative Procedure Act. The hearing shall be closed unless both the sheriff and the deputy involved agree otherwise.

(c) A deputy sheriff accused of a matter for which the sheriff may discharge him may be suspended with pay for a reasonable length of time necessary to investigate and take final action on the matter, provided the deputy shall not be discharged in any final action without the opportunity for a hearing.

(d) A sheriff may in his discretion reduce in rank a member of the executive staff but shall not terminate him without cause.

(e) This section does not prohibit or restrict discharges from employment in order of lowest ranking deputies first, for purposes of reorganization of the sheriff's office or for the reason of lack of funds.

This statute creates a property right in the position of a full-time deputy sheriff by requiring that any termination of employment be for cause and after notice and opportunity for a hearing. Therefore, for purposes of this appeal, in addition to the statutory requirements for notice and opportunity to be heard, there is then a federal constitutional right to due process of law that demands notice of the cause for termination and a hearing on the existence of the cause prior to terminating employment of a full-time deputy sheriff. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *see Town of Upton v. Whisler*, 824 P.2d 545 (Wyo.1992).

■ Section 18–3–611 has existed since 1989 and was in force in March 1992. We hold that the law in March of 1992 was clearly established that a sworn nonprobationary, full-time deputy of a sheriff's department that employed at least twenty full-time deputy sheriffs had a statutorily and constitutionally protected property interest in continued public employment and that a reasonable sheriff should have known and understood this. Thus, Mathews could only be terminated for cause and after notice and opportunity to be heard.

### B. Due Process—Notice and Opportunity to be Heard

Having held that the law was clearly established when Lucero terminated Mathews, we now turn our analysis to what notice was due, as this is a question of law. Mathews asserts that Lucero violated his due process rights when Lucero terminated him. Lucero counters that Mathews was given all the process due under the Constitution. Resolution of this issue necessarily hinges upon the notice given to Mathews of the cause for his termination and the opportunity he was given to respond to the allegations contained within the notice.

■ A nonprobationary, as well as a tenured, public employee is entitled to written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495; *Abell*, 870 P.2d at 372; *Whisler*, 824 P.2d at 548; *Powell v. Board of Trustees, Crook County Sch. Dist. No. 1*, 550 P.2d 1112, 1116–17 (Wyo.1976). This pretermination hearing opportunity, which necessarily includes notice and a hearing, is not only a by-product of § 18–3–611, but is also a function of constitutional law. *See Whisler*, 824 P.2d at 548–49. The due process clause of the United States Constitution requires such notice and hearing, and we point out that Art. 1, § 6 of the Wyoming Constitution also affords equivalent protection to the nonprobationary public employee. *Id.*, at 549; *White v. Board of Trustees, Western Wyoming Community College Dist.*, 648 P.2d 528, 535 (Wyo.1982).

The notice of which we speak is the same kind of notice that is due any public employee who has a property right in continued employment, which includes tenured teachers, municipal judges, and any other nonprobationary public employee. The required notice must afford the public employee "a reasonable opportunity to know the claims of the opposing party and to meet them." *White*, at 535 (*quoting Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938)). The notice must contain adequate

and specific notice of the charges for which the employee is being terminated. *Powell*, 550 P.2d at 1117.

Furthermore, § 18–3–611 states that the Wyoming Administrative Procedure Act applies to the hearing and appeal regarding the termination of a deputy sheriff. The notice sections of the Administrative Procedure Act, W.S. 16–3–107(a) and (b)(iv) (1990), provide:

> (a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice served personally or by mail. * * *

> (b) The notice shall include a statement of:

> \* \* \* \* \* \*

> (iv) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a more definite and detailed statement shall be furnished.

The opportunity to be heard before a public employee's property interest may be taken away goes hand in hand with the notice he must receive. Constitutional due process requires that a public employee be afforded a hearing wherein he may respond to the charges that are contained within the notice before his constitutionally protected property interest may be terminated. (*See generally Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495). This necessarily means that the public employee must be given a real and meaningful opportunity to respond to *every* charge or allegation that is being brought against him and which will be used as a cause for his termination. If the public employee has not been given an opportunity to respond to every allegation which is used against him as a cause for termination of his property interest, then he has not been given a real and meaningful opportunity to be heard and, thus, he has been deprived of constitutionally protected property without due process of law.

We have discussed before what notice and meaningful opportunity to be heard means in the context of termination of employment. In *Powell v. Board of Trustees, Crook County Sch. Dist. No. 1*, supra, the appellant had been dismissed by the board on charges for which he had received no notification. Before the hearing, appellant had been charged with violating various policies having to do with student discipline. However, after the hearing, the board based its decision on appellant's inability to control student conduct. In reversing the board's decision we said:

> In order to satisfy the minimum rights of the appellant he must have had adequate, specific notice of those things with which he was being charged. This is a due-process guarantee which allows him to prepare for his hearing.

> We said in *Glenn v. Board of County Commissioners, Sheridan County*, Wyo., 440 P.2d 1, 4 (1968):

>> \* \* \* The important question is whether or not the parties had fair notice of the issues involved \* \* \*.

> Did Powell have fair notice that he could be found guilty of a student-discipline inadequacy (inability to control conduct), concerning which there had been no charges made, even though he were to successfully defend against the charge of failure to follow student-disciplinary policies of the Board? We hold that he did not.

> What is "fair notice" under *Glenn v. Board of County Commissioners*, supra, as applied to this case? If Mr. Powell was going to be required to defend a student-disciplinary charge, it was necessary to specifically inform and notify him as contemplated by § 9–276.25(a) and (b)(4) and § 21.1–160(b), supra. He had a right to believe that the only student-discipline complaint was embraced in the charge of not following the Board's discipline policy. According to the manner in which the issues were framed, there is no reason to believe he should have guessed that there might be additional dissatisfaction with his student-disciplinary methods over and above and outside the charge that he had failed to follow the District's student-discipline policy.

*Powell*, 550 P.2d at 1117. The reasoning behind the holding in *Powell* holds true for

this case in determining whether Mathews was denied the notice and opportunity due him as prescribed by the clearly established law.

We, therefore, hold that at the time Lucero terminated Mathews' employment, the law was clearly established that Mathews could not be deprived of his constitutionally protected property interest without cause and notice and opportunity to be heard. We affirm the trial court's holding that Lucero is not entitled to dismissal of Mathews' claim of deprivation of property without due process on the basis of qualified immunity.

### C. Political Patronage

Lucero next argues that the trial court erred in determining that he was not entitled to dismissal of Mathews' claim of violation of first amendment rights on the basis of qualified immunity. Mathews brought this claim against Lucero asserting that Lucero did not terminate him for cause, but rather terminated his employment because of Mathews' avid support of incumbent Sheriff Tim McKinney during the 1990 election. Thus, Mathews claims that his employment was terminated because of his political patronage, in violation of clearly established law. We must determine if, at the time Lucero terminated Mathews' employment, the law was clearly established regarding this claim.

The law that was clearly established when Lucero terminated Mathews is as we held above: W.S. 18–3–611 gave Mathews a statutorily protected property interest in his continued employment, and his property interest could be terminated only *for cause* and after notice and opportunity to be heard. Determination of whether Lucero violated this law as to this claim revolves around what is a legally sufficient cause under § 18–3–611 and whether Lucero terminated Mathews' employment for a cause that is legally impermissible.

In March of 1992, it was clearly established what types of causes for termination of public employment were included within the definition of "for cause" contained in § 18–3–611. We stated in *Board of Trustees, Laramie County Sch. Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1174 (Wyo.1976):

The contract teacher may not be deprived of employment contract renewal without cause. *Monahan v. Board of Trustees*, [486 P.2d 235, 236–37 (Wyo. 1971)]. Cause may not be found in a constitutionally-protected reason. Even nontenured teachers cannot be dismissed for exercising constitutional rights. Freedom of speech is constitutionally protected under Article 1, Section 20, of the Wyoming Constitution and the First Amendment of the United States Constitution.

(Footnotes omitted.) In *Powell*, 550 P.2d at 1118–19, we stated:

"Good cause" cannot be just any reason that the Board deems sufficient for the discharge of the teacher. * * * Not only must there be "good cause" and substantial evidence in support of the charge, but in order for the facts to sustain such a charge they must bear reasonable relationship to the teacher's fitness or capacity to perform his duties in that position.

* * * * * *

We find the test of good cause with respect to public officers generally to be facts which are related to the office and affect the administration thereof. *Guine v. Civil Service Commission*, 149 W.Va. 461, 141 S.E.2d 364, 368–369; 63 Am. Jur.2d, Public Officers, Sec. 202, Note 57, page 752.

Therefore, it is the decision of this court that the "good cause" to which the statute refers when the term "any other good or just cause" is used in § 21.1–160, W.S. 1957, 1975 Cum.Supp., or when good cause is contemplated as discussed in *Monahan*, [486 P.2d 235, 236–37 (Wyo.1971)], these terms assume facts which bear a relationship to the teacher's ability and fitness to teach and discharge the duties of his or her position.

■ *Powell* and *Spiegel* were tenured teacher cases; however, the principles underlying the above quoted text are beneficial and applicable to our analysis of Mathews' claim herein. Cause under § 18–3–611 "may not be found in a constitutionally-protected reason." *Spiegel*, 549 P.2d at 1174. We find that "cause," to which § 18–3–611 refers

when it states that a deputy sheriff may be terminated only "for cause," necessarily means a cause or justification which bears a reasonable relationship to the deputy sheriff's ability and fitness to perform and discharge the duties of his or her position. *Powell*, 550 P.2d at 1119. We further find that under § 18–3–611, political patronage and other expressions of the freedom of association and party affiliation are not cause or justification for which a deputy sheriff may be terminated.

■ The First Amendment of the United States Constitution gives a person the right to freely express who they support in an election and why they support such a person, without fear of retaliation for expressing such views by a public employer. Therefore, because political patronage is a form of free expression and freedom of association, it is protected by the First Amendment of the United States Constitution, as well as Art. 1, § 20 of the Wyoming Constitution, and, as such, it may not be used as a reason or cause to terminate a public employee's employment under W.S. 18–3–611. *See Spiegel*, 549 P.2d at 1174.

■ We hold that in March 1992, a sheriff should have known that the law was clearly established that a deputy sheriff could be terminated only for cause, and that such a cause did not include constitutionally protected rights. Lucero should have known of the existence of W.S. 18–3–611 and that it required a legally sufficient cause for termination of a deputy. Lucero should have also known, in accordance with Wyoming case law, that political patronage could not be such a cause for termination under § 18–3–611.

Therefore, we hold that at the time Lucero terminated Mathews' employment, the law was clearly established that Mathews could be terminated only for cause, that termination for political activity was not a legally permissible cause, and such discharge for political activity would be in violation of Mathews' First Amendment rights. We affirm the trial court's holding that Lucero is not entitled to dismissal of Mathews' claim of violation of First Amendment rights on the basis of qualified immunity.

## D. Breach of Contract

■ Mathews brought a claim against Lucero in his official capacity as Fremont County Sheriff for breach of his employment contract. This is not a claim against Lucero in his individual capacity, and, as such, qualified immunity does not apply. Lucero moved for summary judgment on this claim, and the district court denied the motion. Because qualified immunity does not apply to this claim, the denial of summary judgment by the district court is just like any other denial of summary judgment: It is not a final order. *Equality Bank v. Suomi*, 836 P.2d 325, 330 (Wyo.1992). We, therefore, hold that the district court's denial of summary judgment as to Mathews' breach of contract claim is not a final, appealable order and dismiss this part of Lucero's appeal.

## V. CONCLUSION

We affirm the trial court's holding that Lucero is not entitled to dismissal of Mathews' claims against him on the basis of qualified immunity and remand to the trial court for further proceedings.