Sandra RICHARDSON,
Plaintiff–Appellant,

v.

The CITY OF ALBUQUERQUE, a municipal corporation; Harry Kinney, Mayor of the City of Albuquerque; Frank A. Kleinhenz, Chief Administrative Officer of the City of Albuquerque; Shirley Harris, Director of Personnel Services of the City of Albuquerque; Albuquerque Police Department; E.L. Hansen, Chief of the Albuquerque Police Department; Larry Michalsheck, Director of Training of the Albuquerque Police Academy; William Blankenship, individually and as Lieutenant in the Albuquerque Police Department; Paul T. Williams, individually and as former Director of Training for the Albuquerque Police Academy; Rudy Vigil, individually and as former Administrative Officer of the Albuquerque Police Academy; William Riley, individually and as former Training Sergeant of the Albuquerque Police Academy; Grady Taute, individually and as former Staff Instructor of the Albuquerque Police Academy; and Tom Valdez, individually and as former Class Officer of the Albuquerque Police Academy, Defendants–Appellees.

No. 86–1501.

United States Court of Appeals,
Tenth Circuit.

Sept. 22, 1988.

Alice G. Hector of Hector & Associates, P.A., Albuquerque, for plaintiff-appellant.

Judy K. Kelley, Asst. City Atty. (James H. Foley, City Atty., and John W. Pope, Asst. City Atty., with her on the briefs), Albuquerque, N.M., for defendants-appellees.

Before HOLLOWAY, Chief Judge, McWILLIAMS, Senior Circuit Judge, and BRORBY, Circuit Judge.

BRORBY, Circuit Judge.

Sandra Richardson brought claims of sex, age, and handicap discrimination under 42 U.S.C. § 1983 against the City of Albuquerque and defendant police officers arising out of her termination as a police cadet. Richardson further claimed her termination, without notice and hearing, denied her due process in violation of the Fourteenth Amendment. Richardson also asserted pendent state claims of breach of contract, wrongful discharge, intentional interference with contract, outrageous conduct, and defamation. At the conclusion of Richardson's case, the trial court directed a verdict for the defendants on her due process claim. The jury returned a verdict for the defendants on all other claims.

Richardson asserts on appeal that the trial court erred in denying her motion for a new trial because the jury's verdict for the defendants is against the weight of the evidence. She also asserts the trial court erred in directing a verdict on her due process claim because its ruling ignored her assertion that she had a property interest in her position as a probationary employee. We AFFIRM.

*Plaintiff's Evidence*

At trial, Richardson presented the following evidence. Richardson was a thirty-nine year old female at the time she applied for admission to the Albuquerque police cadet academy. During the application process, she learned that her uncorrected eyesight did not meet minimum requirements for admission. The City and Richardson entered into an agreement conditioning her admission to the police academy upon her ability to perform all duties with special contact lenses and "[i]f said contacts do not remain attached during all duties or training or Richardson is unable to wear these special lenses for extended periods including all duty or training times, she agrees that she may be immediately terminated."

Richardson also learned that in order to be admitted to the police academy she must pass a state-mandated agility test which included a timed 440-yard run, an obstacle course, a 150-pound body drag, and a car push. For over six months Richardson did personal physical training designed to enable her to pass the agility test. In June 1982, Richardson passed the initial physical agility test and was admitted to the academy class beginning in November.

At the beginning of the academy, all cadets were given a physical fitness test. Cadets who did not perform well were placed in the "fat squad," a remedial training program that met at the end of other regular activities. Richardson was rated "excellent" for aerobic condition, and "fair" for dynamic strength. She was placed on the "fat squad." Nearly all the cadets in Richardson's class were placed on the "fat squad" at some time during the academy. The defendant police instructors yelled at Richardson during physical training and during every run. Instructors told Richardson she was "blind as a bat" and would get people killed. They accused her of having sexual problems with her husband and having a sexual preference for other women. Instructors called her an "old hag," and laughed at remarks that she was older than other cadets' mothers. During physical training, the instructors yelled at Richardson for not doing exercises, although she testified that she was doing the exercise required. The instructors refused to give her credit for exercises which they felt she did incorrectly. During a practice agility test in December, Richardson failed three of the four timed events.

During a boxing match at which Richardson's nose was broken, she lost one of her contact lenses. When she reported this to the instructor, he told her not to worry about it. The instructor then attempted to terminate Richardson based upon breach of her agreement. The chief of police decided she would not be terminated.

Two weeks later, Richardson was removed from class and terminated. She re-ceived a disciplinary charge sheet which stated:

Between 11-16-82 and 12-15-82, you failed to adequately complete the entire physical tasks required in your physical training at the Albuquerque Police Academy. Your inability to pass these physical requirements as outlined in the attached documentation is now resulting in your termination, effective immediately.

The attached documentation indicated Richardson had failed to physically improve, constantly fell behind on runs, and failed a physical agility test. Also attached were cadet counseling forms documenting Richardson's inability to perform various physical tasks. During the processing of her termination, Richardson contested the charge sheet's supporting documentation. She stated her inability to progress in running was due to instructors' continual harassment, and the low count on push-ups and sit-ups was due to the instructors refusing to count her exercises.

At trial, Richardson presented testimony of her athletic trainers that she was physically fit at the time she entered the academy. Exercise physiologists testified that the academy training program was not designed to improve cadets' physical performance nor were the levels of expected performance gauged to the individual's sex or age. They also testified on the adverse effect of stress on physical performance.

### Defendants' Evidence

At trial, the defendants presented the following evidence. The police academy instructors testified that verbal harassment was part of the high-stress training to prepare cadets for real life work on the streets. The purpose of this military-type training was to mold the individuals into one unit. Cadets from Richardson's class testified that they all received harassment like Richardson and that this high level of stress prepared them well for their current duties as police officers. Lieutenant Williams stated that Richardson told him the stress of having to perform physically in the academy was having a negative psychological impact on her performance.

The defendants testified Richardson was terminated solely because she was unable to perform the physical requirements set by the academy. Richardson was unable to perform the same number of sit-ups and push-ups as the rest of the class. She always fell behind during runs, sometimes finishing ten minutes late. Women were not treated differently from men because both had to perform the same job. Defendants testified they were actively recruiting women for the academy. They had no reason to terminate women, because they can perform well in the field. All cadets were required to reach the same level of performance regardless of age. Cadets who were age thirty and forty have graduated from the academy. Just before Richardson was admitted to the academy, the police department removed the age limit, because it had determined older applicants brought more maturity to the job. The defendants also testified they were not happy with Richardson's waiver of the vision requirements, but they did not treat her differently as a result of it. The jury returned a verdict for the defendants on all counts.

## I. SUFFICIENCY OF THE EVIDENCE

Richardson asserts the jury's verdict for the defendants on her claims of sex, age, or handicap discrimination is not supported by substantial evidence. Following trial, Richardson filed a motion for new trial, alleging the verdict for the defendants was against the weight of the evidence. The trial court denied the motion finding the defendants vigorously defended against the plaintiff's claims and the jury could have reasonably concluded the plaintiff failed to prove by a preponderance of the evidence her claims of discrimination.

A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court. *Black v. Hieb's Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir.1986); *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 617 (10th Cir.1984); *Harris v. Qui-*

*nones*, 507 F.2d 533, 535 (10th Cir.1974); *Community Nat'l Life Ins. Co. v. Parker Square Sav. & Loan Ass'n*, 406 F.2d 603, 605 (10th Cir.1969); *Champion Home Builders v. Shumate*, 388 F.2d 806, 808 (10th Cir.1967). On review, the trial court's decision to deny a motion for new trial will stand absent a showing of a manifest abuse of discretion. *Brown*, 736 F.2d at 617; *Howard D. Jury, Inc. v. R. & G. Sloane Mfg. Co.*, 666 F.2d 1348, 1352 (10th Cir.1981); *Walter v. Warner*, 298 F.2d 481, 484 (10th Cir.1962). Our inquiry focuses on whether the verdict is "clearly, decidedly, or overwhelmingly" against the weight of the evidence. *Black*, 805 F.2d at 360; *Champion Home Builders*, 388 F.2d at 808; *Locke v. Atchison, Topeka & Santa Fe Ry. Co.*, 309 F.2d 811, 817 (10th Cir. 1962); *Prebble v. Brodrick*, 535 F.2d 605, 617 (10th Cir.1976).

We have carefully reviewed the entire trial record in assessing Richardson's challenge to the sufficiency of the evidence on her claims of discrimination. We are not convinced the jury's verdict for the defendants was clearly, decidedly, or overwhelmingly against the weight of the evidence. We are satisfied there was sufficient evidence for the jury to find the defendants did not discriminate against Richardson based on her sex, age, or visual handicap. Richardson presented testimony which established that defendant police officers harassed her about her sex life, being an "old hag," and that her inability to see without corrective lenses was a safety hazard. The defendants presented considerable evidence that all police cadets received harassment as part of the high-stress training program regardless of their age or sex. The defendants also testified they did not treat Richardson differently because of her visual handicap. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985); *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179-80, 94 L.Ed. 150 (1949). The evidence in Richardson's favor does not

clearly, decidedly, or overwhelmingly establish discrimination. The trial court did not abuse its discretion when it accepted the jury's verdict for the defendants and denied a new trial.

## II. DUE PROCESS

The second issue Richardson raises is that the trial court erred in directing a verdict against her claim of denial of due process in violation of the Fourteenth Amendment. At trial, Richardson claimed denial of due process on both liberty and property grounds. The trial court directed a verdict against her on both claims of denial of due process. It found Richardson had no property interest in her position as a probationary employee and no liberty interest was implicated because the reasons for her termination were not stigmatizing and were not published. On appeal, she addresses denial based only on her alleged property interest.

Upon review of a directed verdict, we must view the evidence and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Martin v. Unit Rig & Equipment Co.*, 715 F.2d 1434, 1438 (10th Cir.1983); *Miller v. City of Mission*, 705 F.2d 368, 373 (10th Cir.1983). A directed verdict may not be granted unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made. *Ewers v. Board of County Comm'rs*, 802 F.2d 1242, 1247 (10th Cir. 1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988); *Casias v. City of Raton*, 738 F.2d 392, 394–95 (10th Cir. 1984). Richardson has the burden of specifically demonstrating the clear errors in the findings of the trial court. *Butler v. Hamilton*, 542 F.2d 835, 838 (10th Cir. 1976). A trial court's findings are presumed correct. *Koch v. City of Hutchinson*, 814 F.2d 1489, 1495 (10th Cir.1987).

■ Procedural due process requires a pretermination hearing where liberty or property interests protected by the Fourteenth Amendment are implicated. *Board of Regents v. Roth*, 408 U.S. 564, 567, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972). A plaintiff must first establish, however, that there is a protected interest at stake.

A public employee facing discharge is entitled to the safeguards of procedural due process only if he can demonstrate that the termination implicates a property or liberty interest protected by the Due Process Clause; if a property or liberty interest is not implicated, "he must settle for whatever procedures are provided by statute or regulation."

*Sipes v. United States*, 744 F.2d 1418, 1420 (10th Cir.1984). The trial court concluded Richardson had no property interest because she was a probationary employee terminable at will under New Mexico law.

To establish a property interest in a particular benefit, one must have a "legitimate claim of entitlement" to it. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *see, Graff v. Glennen*, 106 N.M. 668, 748 P.2d 511 (1988). However, a claim of entitlement need not be grounded on a specific statutory or contractual provision. "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support [her] claim of entitlement to the benefit and that [she] may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The sufficiency of such a claim of entitlement is determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Lovato v. City of Albuquerque*, 106 N.M. 287, 742 P.2d 499 (1987).

■ Richardson asserts her property interest arises out of an implied contract created by the State merit statute, N.M. Stat.Ann. § 3–13–4 (1978); the City Merit System Ordinance; and personnel regulations, which she asserts provide that a probationary employee may only be terminated for justifiable cause. New Mexico has recognized that a contract of employment may be implied from a personnel policy guide, *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980), or merit system ordinance, *Casias*, 738 F.2d at 395. We must now determine whether these statutes, or-

dinances and rules grant probationary employees a legitimate claim of entitlement.

Viewed in the light most favorable to Richardson, the record reveals the following facts. Richardson was admitted to the police cadet academy for the normal probationary period of twelve months. N.M. Stat.Ann. § 3–13–4 (1978) allows municipalities to establish a merit system. The City of Albuquerque adopted a merit system to regulate hiring, promotion, and discharge. The merit system places police officers in the classified service which entitles them to all the rights and benefits provided by the Merit System Ordinance after completion of the probationary period. The Merit System Ordinance section on probationary employees states in pertinent part:

All original appointments to the classified service shall be tentative and subject to a probationary period. Such probationary period shall be twelve (12) months after the original appointment date for all ... policemen.... Original appointment as a policeman ... shall be tentative and subject to a probationary period of twelve (12) months from the date of entrance into the Police Academy.

At any time during the probationary period, an employee whose performance does not meet the required work standards or who is found not to be suitable employee shall be terminated. The change from probationary to non-probationary status shall require positive action by the department head and failure to take positive action at the end of the probationary period shall constitute dismissal of the employee.

An employee on probationary status is not entitled to the rights and benefits provided for in Section 25 [the grievance procedure].

The employee handbook states "[i]f the supervisor reports unsatisfactory progress at any time during probation, the employee may be separated from the City service."

The Merit System Ordinance also makes the following provisions for disciplinary actions:

[A] department head may ... dismiss any employee without pay for any justifiable cause including, but not limited to inadequate performance of an employee's duties.

A written statement of the reasons for any ... dismissal shall be submitted to the employee affected within a reasonable time after the effective date of the ... dismissal.

The rules and regulations promulgated upon the Merit System Ordinance contain similar provisions. Richardson asserts these provisions create a property right because she can only be removed for "justifiable cause."

In determining whether Richardson can be terminated from her probationary position only for justifiable cause, we must consider the Merit System Ordinance and other rules and regulations promulgated thereunder as a whole. We construe the "justifiable cause" provision for disciplinary actions as applying only to nonprobationary employees. A different standard for termination of probationary employees is stated in the Merit System Ordinance as "performance [which] does not meet the required work standards or [if the employee] is found not to be suitable." Reading the Merit System Ordinance and the rules and regulations in their entirety leads us to conclude the section governing probationary employees was clearly designed to offer a lesser expectation of continued employment than that offered to permanent employees. *Blanton v. Griel Memorial Psychiatric Hosp.*, 758 F.2d 1540, 1543 (11th Cir.1985); *Walker v. United States*, 744 F.2d 67, 68 (10th Cir.1984); *cf. Forrester*, 606 P.2d at 192.

Richardson has failed to establish a legitimate claim of entitlement to her probationary position in light of the Merit System Ordinance provisions that a probationary police officer's appointment is tentative; may be terminated at any time during the probationary period if the employee is not suitable; and the change from probationary to nonprobationary status requires positive action at the end of the period or the employee is dismissed. We conclude that

the Merit System Ordinance and other rules and regulations promulgated thereunder do not create a property interest in probationary employees, and therefore do not trigger the due process protections asserted by Richardson. The trial court's directed verdict on Richardson's due process claims was correct.

AFFIRMED.