**Linda M. ABELL, Appellant (Plaintiff),**

**v.**

**Roger W. DEWEY and the State of Wyoming, Appellees (Defendants).**

**No. 92–41.**

Supreme Court of Wyoming.

March 15, 1994.

---

Harold F. Buck, Buck Law Offices, Cheyenne, for appellant.

Elizabeth Zerga, Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., and Joseph B. Meyer, Atty. Gen., and John Renneisen, Deputy Atty. Gen., Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN, and TAYLOR, JJ.

TAYLOR, Justice.

After granting a petition for rehearing, we are asked to examine whether a government official has qualified immunity from a civil action for deprivation of constitutional rights. Asserting we erroneously decided two issues in *Abell v. Dewey,* 847 P.2d 36 (Wyo.1993) (*reh'g granted* 3/16/93), the State of Wyoming and a government official contend that at the time a former employee was dismissed from her position, the law was not "clearly established" that a probationary employee of the executive department of state government would have a constitutionally protected property interest in continued public employment. Further, the State and the government official insist that this question is an issue of law

for the court to decide, not an issue of fact as we previously held. The State and the government official argue that if these issues had been properly decided, the government official would have qualified immunity. Upon further review, we hold the government official is entitled to qualified immunity, in his individual capacity, to the cause of action under 42 U.S.C.S. § 1983 (Law Coop.1986) brought by the former employee.

## I. ISSUES

Appellees, the State of Wyoming and Roger W. Dewey, identify two issues for rehearing:

I. The Court erroneously applied the law of qualified immunity, i.e. the law was not clearly established in 1990 that a state probationary employee had a property interest in continued employment, and Appellee Dewey is therefore immune from suit.

II. The question of whether Appellee Dewey is entitled to qualified immunity is solely a question of law and not a question of fact, as indicated in the Court's opinion.

Appellant, Linda M. Abell, summarizes:

I. Whether a reasonable department head working for the State of Wyoming could have believed in January, 1990, that terminating a state employee who was employed pursuant to an employee handbook requiring cause to terminate, without cause to terminate, and without affording her a hearing of any kind, was lawful in light of clearly established law.

## II. FACTS

In June of 1989, Linda M. Abell (Abell) completed an application for employment with the State of Wyoming (State). Abell sought a position as an auditor in the Minerals Audit Division of the Department of Audit. Question number twenty-one on the application form inquired: "Have you ever been convicted of an offense in a court of law?" After consulting with her attorney, Abell intentionally failed to answer the question.

Abell maintained her attorney advised her that she had not been convicted of an offense, but that position was confusing due to her prior criminal record; so, she did not respond to the question. In 1984, Abell had entered a plea of nolo contendere to a charge of felony larceny. See Wyo.Stat. § 6–3–402(a) (1988). During a five-year period of employment with Natural Gas Processing, a Worland, Wyoming firm, Abell had stolen $193,737.52 in checks from the firm. The district court sentenced Abell, then known as Linda Wyss, to five years of supervised probation. A related civil action, filed by Natural Gas Processing, was settled out of court.

In July of 1989, the Manager of the Minerals Audit Division of the Department of Audit, John McGrath (McGrath), conducted an employment interview with Abell. In response to a question about her employment history, Abell said: "I left Natural Gas Processing as a result of two very personal and painful lawsuits with my former employer." Without mentioning that one of the "lawsuits" involved a conviction for a felony offense, Abell said the civil lawsuit was settled out of court. Following the interview, McGrath offered Abell the position of Natural Resources Production Principal Auditor.

Abell understood that she would be classified as a probationary employee. According to the Personnel Rules of the then Department of Administration and Fiscal Control (hereinafter personnel rules), a new employee of the executive branch of state government is given a probationary appointment during the first year of continuous service. Chapter IV, Section 7 of the personnel rules explains:

(a) The probationary period is an integral part of the examination process and shall be utilized for closely observing the new employee's work, for securing the most effective adjustment of the employee to the position, and for dismissing any employee without right of appeal whose performance is found not to meet required standards.

Abell accepted the offer and began her employment on August 1, 1989. After about two weeks, Abell discussed her criminal conviction with the Acting Director of the Department of Audit, Stan Hunt (Hunt). Abell told Hunt she was "on probation" for "em-

bezzlement." Abell claimed she could not discuss the details because of a confidential settlement in the related civil action. Hunt requested Abell obtain a confirming letter from the Department of Probation and Parole which was placed in Abell's personnel file. The letter, dated September 21, 1989, was written by Abell's probation officer. The probation officer indicated Abell had entered a plea of nolo contendere to a charge of felony larceny but due to "unusual circumstances," Abell had not been ordered to repay the stolen funds. Abell had been sentenced to five years of supervised probation which was due to expire in February of 1990. Hunt purportedly told Abell the conviction was "not a problem."

On October 15, 1989, Roger W. Dewey (Dewey) was appointed the Director of the Department of Audit. Shortly after he assumed his official duties, Dewey reviewed Abell's personnel file, including the letter from the Department of Probation and Parole. Dewey requested that the Department of Audit's personnel officer seek advice from the Attorney General's office about Abell's status. Dewey expressed his concern about Abell's employment to Hunt. Dewey told Hunt that having an auditor on staff who had a past history of manipulating financial data to her benefit would raise questions about the credibility of Abell's work.

In late October of 1989, Dewey met with Abell to discuss her status with the Department of Audit. Abell informed Dewey that she did not believe she had been convicted of a crime and hoped to have her record expunged in February of 1990 when her probation expired. Abell reported she had taken the checks as her share of what she described as a business partnership with a close personal friend. Abell agreed to sign a release to enable Dewey to obtain additional information from the Department of Probation and Parole. Abell signed the release form on November 21, 1989.

After he received the release form, the Director of the Department of Probation and Parole agreed to meet with the personnel manager of the Department of Audit and Abell. The meeting did not occur until January 8, 1990. Following the meeting, the personnel manager informed Dewey that the Department of Probation and Parole considered Abell to be a convicted felon. Dewey then directed the personnel manager to consult with the Attorney General's office and the executive department's personnel office to determine the proper procedure to terminate Abell's employment.

Dewey and the personnel manager met with Abell on January 10, 1990. Dewey told Abell that the information from the Department of Probation and Parole was a problem. Abell again responded that she did not consider herself a convicted felon. Resignation and various settlement options were discussed, but Abell did not resign.

Dewey delivered a dismissal letter to Abell on January 16, 1990. The personnel rules permitted the dismissal of a probationary employee by letter: "An agency head may dismiss an employee having other than permanent status, without right of appeal, for reasonable cause upon providing written notification to the employee specifying: (A) The reason(s) for the dismissal; and (B) The effective date of the dismissal." The letter stated: "Due to circumstances involved in your criminal case * * *, it will not be possible for this office to effectively adjust you to the Auditor position during your probationary period nor to continue your employment as an Auditor for the Minerals Division." The letter explained Abell was dismissed because: "There is reasonable cause to believe that, as a professional person auditing oil and gas companies, your previous record will have an adverse effect on the credibility of the audits performed by this office, and that your continued employment is detrimental to the operation of the agency."

Abell requested a dismissal appeal hearing. The Personnel Administrator of what is presently the Department of Administration and Information, Mike Miller (Miller), denied the hearing request. Miller informed Abell that under the personnel rules, probationary employees of the executive branch of state government could be dismissed for reasonable cause without a right of appeal.

Abell filed a complaint seeking damages and injunctive relief on January 14, 1991.

Abell alleged: a cause of action against the State for breach of a contract of employment; a cause of action against Dewey for depriving Abell of a property interest in her state employment without due process of law in violation of 42 U.S.C.S. § 1983; and a cause of action seeking a declaration that the personnel rules were unconstitutional.

On July 26, 1991, the State and Dewey filed a motion for summary judgment. The State asserted that there was no breach of contract because Abell was dismissed from her employment "for reasonable cause." Dewey maintained he had qualified immunity from the cause of action under 42 U.S.C.S. § 1983. On July 29, 1991, Abell filed a motion seeking partial summary judgment. Abell also sought leave to amend her complaint to state a cause of action against Miller.

The district court granted summary judgment in favor of the State and Dewey. The district court found there was no breach of contract because Abell was dismissed for reasonable cause. Furthermore, the district court ruled that Abell was a probationary employee with no reasonable expectation of continued public employment sufficient to create a property interest. The motion for partial summary judgment filed by Abell was denied. The district court ruled the motion for leave to amend the complaint, and other pending motions, were made moot by the summary judgment.

## III. DISCUSSION

Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages when their conduct " *'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'* " *Park County v. Cooney*, 845 P.2d 346, 351 (Wyo.1992), *cert. denied*, ⎯ U.S. ⎯, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)) (emphasis in original). Qualified immunity " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant*,

⎯ U.S. ⎯, ⎯, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986)). The decisive fact is not that the official's position turned out to be incorrect, but that the question was open at the time the official took the challenged action. *Mitchell v. Forsyth*, 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985).

As an affirmative defense, qualified or "good faith" immunity must be pleaded by the government official. *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736. Even when the case is tried in state court, the elements of, and defenses to, a federal cause of action for violation of 42 U.S.C.S. § 1983 are defined by federal law. *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990). *See Teton Plumbing & Heating, Inc. v. Board of Trustees, Laramie County School Dist. No. One*, 763 P.2d 843, 847 (Wyo.1988) (listing the elements of a cause of action under 42 U.S.C. § 1983 and identifying concurrent jurisdiction of this court). Immunity questions should be resolved at the earliest possible stage of litigation because " '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability * * *.' " *Hunter*, ⎯ U.S. at ⎯, 112 S.Ct. at 536 (*quoting Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815) (emphasis in original). Therefore, the presence or absence of qualified immunity is generally determined by either a motion to dismiss or a motion for summary judgment. *Cooney*, 845 P.2d at 349 (holding denial of motion to dismiss based upon qualified immunity is an appealable order); *Mitchell*, 472 U.S. at 526–27, 105 S.Ct. at 2815–16 (holding denial of summary judgment based upon qualified immunity is an appealable order).

When there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, this court will affirm a grant of summary judgment. W.R.C.P. 56(c). The presence or absence of qualified immunity presents a question of law which is reviewed on appeal de novo. *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1476 (10th Cir.1993). Once a government

official asserts qualified immunity, the plaintiff in an action under 42 U.S.C.S. § 1983 bears the initial burden of convincing the court that the constitutional right was clearly established. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991); *V–1 Oil Co. v. State of Wyo., Dept. of Environmental Quality*, 902 F.2d 1482, 1487 (10th Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). If the plaintiff fails to meet this burden, summary judgment in favor of the government official should be granted. *Dixon*, 922 F.2d at 1460. However, once the plaintiff identifies the clearly established law and the alleged conduct that violated the law with sufficient particularity, the government official then bears the burden of establishing that there are no disputed material facts which would defeat the claim of qualified immunity. *Langley*, 987 F.2d at 1476 (*quoting Patrick v. Miller*, 953 F.2d 1240, 1243 (10th Cir.1992)).

In *Abell*, 847 P.2d at 43, this court reversed the district court's grant of summary judgment in favor of the State and Dewey. We concluded that the personnel rules created an implied in fact contract of employment between the State and Abell requiring that any dismissal be "for reasonable cause." *Id.* at 41. *See Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986) and *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702 (Wyo. 1985). *See also Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 702–03, (Wyo.1994). We held that whether Abell's criminal conviction constituted reasonable cause for dismissal remained an issue of material fact which precluded summary judgment in favor of the State on the breach of contract claim. *Abell*, 847 P.2d at 41. This holding is unchallenged by the petition for rehearing.

We also determined that the dismissal "for reasonable cause" language of the personnel rules gave Abell a reasonable expectation of continued public employment which created a property interest. *Id.* at 40. Under federal law, an individual with a constitutionally protected property interest may not be deprived of that interest by state action without the due process protection afforded by the Fourteenth Amendment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), *cert. denied*, 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988). Without qualified immunity, therefore, a person acting under color of state law or regulation who deprived a probationary employee of the executive branch of state government of a constitutionally protected property interest without due process would be liable for damages. 42 U.S.C.S. § 1983.

The State and Dewey argue that in January of 1990, at the time Dewey dismissed Abell, the law creating a constitutionally protected property interest in employment for a state probationary employee was not clearly established. Therefore, Dewey contends he has qualified immunity for his actions. On rehearing, the State and Dewey challenge the substance of the following holding from our first opinion:

> We hold that the recognition of due process rights entitles Abell to maintain the 42 U.S.C. § 1983 claim against Dewey and that summary judgment was improperly granted. It now becomes a question of fact whether this right was clearly established concerning probationary employees or whether the meeting held between Abell and Dewey prior to her termination was sufficient to satisfy the due process requirement. We remand this issue to the trial court for determination.

*Abell*, 847 P.2d at 43.

■ We begin by addressing whether it is a question of law or fact when a constitutional right is clearly established. At oral argument, all parties conceded that this is a question of law. We agree. The Supreme Court of the United States has directed: "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. *See also Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816 (noting that it is a question of law whether the rights allegedly violated by a government official were clearly established at the time of the challenged action).

■ In order to find qualified immunity, the objective legal reasonableness of a government official's conduct is assessed in the

light of the clearly established statutory or constitutional rights at the time of the action. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39.

"The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.  * * *  It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: ***The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.*** This is not to say that official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Cooney*, 845 P.2d at 351–52 (*quoting Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987)) (emphasis in original). Therefore, we must address, as a matter of law, whether a reasonable public official, in January of 1990, would have understood that an employee of the executive branch of state government classified as probationary and subject to dismissal without right of appeal "for reasonable cause" had a constitutionally protected property interest.

■ "In deciding whether the law was clearly established at the time of the incident, there must be some factual correlation between then-existing law and the circumstances confronting the public official." *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir.1990), *cert. denied sub nom. Swepston v. Snell*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). While government officials are not expected to anticipate developments in the law, *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, a reasonable government official is required to " 'relate established law to analogous factual settings.' " *Cooney*, 845 P.2d at 352 (*quoting Garcia by Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988)).

There is a limit, however, to the knowledge of the law expected of a government official. In *Woodward v. City of Worland, Wyoming*, 977 F.2d 1392, 1394 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993), police and sheriff's dispatchers alleged they were sexually harassed by other officers and supervisors in violation of clearly established federal law. The court held that at the time of the alleged harassment, a single case from another judicial circuit and several federal district court cases did not clearly establish that sexual harassment was actionable under the Equal Protection Clause. *Id.* at 1397.

Similarly, in *Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171, 1172 (6th Cir.1988), the court held prison officials had qualified immunity for authorizing strip searches of employees because the law was not clearly established at the time of the searches. The court determined that a clearly established constitutional right, in ordinary circumstances, may only be found by a federal district court when there is binding precedent from the Supreme Court of the United States, the United States Court of Appeals for the circuit in which the district court resides, or when the district court has ruled on the issue. *Id.* at 1177. In extraordinary circumstances, it may be possible for decisions of other courts to establish a principle of law. *Id.*

For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Id.* A "mere handful" of decisions from other circuit and district courts cannot form the basis for a clearly established constitutional right. *Id.* at 1177–78. *See also Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986).

With property interests, the difficulty in measuring a clearly established constitutional right at a specific point in time is compounded. The federal constitution does not create a property interest in continued public employment. In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the court declared that property interests are created and defined by independent sources such as state statutory law, regulations or the terms of employment. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709.

Often, finding a legitimate claim of entitlement to public employment requires a definitive interpretation of state law, which is the function of a state supreme court or, on occasion, the federal district court residing in that state. The importance of state law in creating a property interest is illustrated by *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A former city police officer contended that government officials violated the officer's due process rights by failing to provide a pre-termination hearing. The officer was classified as a permanent employee. *Id.* at 343, 96 S.Ct. at 2076. Applying North Carolina law, however, a federal district court determined that the police officer held his position "at will." The Supreme Court of the United States held that the district court's decision was a fair read-

ing of the city ordinance defining the terms of the officer's employment. *Id.* at 344–45, 96 S.Ct. at 2077–78. Justice Stevens noted that on its face, the city ordinance may also have been fairly read as conferring an enforceable expectation of continued public employment. *Id.* at 345, 96 S.Ct. at 2077. However, because the district court's view was "tenable" and supported by a decision of the Supreme Court of North Carolina, the Supreme Court of the United States held the officer was not deprived of any constitutionally protected property interest when he was terminated. *Id.* at 347, 96 S.Ct. at 2078.

In Wyoming, this court has recognized that our legislature created a property interest in continued employment for tenured or "continuing contract teachers." *Seyfang v. Board of Trustees, Washakie County School Dist. No. 1*, 563 P.2d 1376, 1381 (Wyo.1977); *Board of Trustees, Laramie County School Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1170 (Wyo.1976); Wyo.Stat. § 21–7–104 (1992). We have also recognized that the legislature created a property interest in continued public employment for municipal judges. *Town of Upton v. Whisler*, 824 P.2d 545, 548 (Wyo. 1992). However, we have declared that "initial contract teachers," employed under contracts which required notice of termination by a specific date, did not have a property interest in their positions. *Roberts v. Lincoln County School Dist. No. One*, 676 P.2d 577, 579 (Wyo.1984); *O'Melia v. Sweetwater County School Dist. No. 1*, 497 P.2d 540, 542 (Wyo.1972).

Abell does not contend that Dewey should have made a factual correlation between the existing law stated in Wyoming's teacher tenure cases and the circumstances of Abell's employment. Indeed, such a correlation would not benefit Abell. A plausible argument exists that Abell's probationary status would most closely parallel the status of an "initial contract teacher." Instead, Abell argues a reasonable Wyoming public official, in January of 1990, should have known that a probationary employee of the executive department had a constitutionally protected property interest because of decisions of this court in employee handbook cases and some

federal court decisions applying other state's laws. We do not agree.

In *Parks,* 704 P.2d at 707, we recognized that an employee handbook could provide terms for an implied in fact contract of employment. The language of the employee handbook at issue provided for a system of progressive discipline. As a result, we held the employer's general right to discharge an employee at will had been effectively transformed into a requirement that termination be for cause only. *Id.* at 706. We carefully noted the limitation of our holding:

> This is not to say that the existence of a handbook or employer's manual will make employment other than at will in all instances. ***Each case must be considered on its own merits.*** Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact.

*Id.* (emphasis added). *Parks* did not address any distinctions between permanent employment and probationary employment.

In *Alexander v. Phillips Oil Co.,* 707 P.2d 1385, 1389 (Wyo.1985), we held that an implied in fact contract of employment requiring cause for termination had been created when the employer distributed a handbook. The provisions of the employee handbook and a supervisor's discipline manual both contributed to the court's finding that employment was not at will. *Id.* at 1387–89. The interpretation that cause was required for termination was made despite specific language in the handbook that termination could be "with or without cause." *Id.* at 1388.

Finally, in *Leithead,* 721 P.2d at 1061, employees were classified, according to terms of an implied contract created by a handbook, as probationary or permanent. We held that the separate classifications strongly implied that a permanent employee could only be discharged for cause. *Id.* at 1063. In a footnote, we stated that the "vague criterion" for termination of a probationary employee "probably" created an at will relationship. *Id.* at 1063 n. 2.

The employee handbook cases would teach a reasonable public official that if an implied in fact contract of employment has been formed, the employer has an obligation to execute the terms of the contract. For example, if the implied in fact contract of employment permits dismissal only for cause, termination of employment without cause or without the cause required by the contract would be actionable as a breach of the implied contract. Abell alleges such a breach of contract against the State. She maintains that her criminal conviction does not constitute "reasonable cause" for dismissal under the terms of her implied in fact contract of employment. That question will be decided on remand.

At a more basic level, however, the employee handbook cases would demonstrate to a reasonable public official that complex questions of contract formation are presented by the distribution of an employee handbook or personnel rules. These are questions which often require interpretation of the specific provisions making generalizations difficult. *Parks,* 704 P.2d at 706. For example, a fair reading of the personnel rules would suggest the presence of alternative interpretations of the language when considered as a whole. Under one interpretation, a probationary employee could be viewed as having a diminished expectation of continued public employment because probationary employees could be dismissed for performance which is "found not to meet required standards." In another interpretation, a probationary employee could be entitled to an enhanced expectation of continued public employment because probationary employees could only be dismissed "for reasonable cause." A reasonable public official would not have known which view would prevail until our decision in *Abell,* 847 P.2d at 42, when this court interpreted the latter provision as governing. From our reading of the employee handbook cases, we are unable to find that a reasonable official would have understood that dismissing Abell violated a clearly established constitutional right. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

The employee handbook cases alone could not clearly establish that an employee classified as probationary but subject to dismissal "for reasonable cause" would have a constitutionally protected property interest in public employment. One reason is the employee handbook cases decided in Wyoming by 1990 dealt with employment in private industry. Constitutionally protected property interests in public employment were not at issue. We must, therefore, shift our focus from Wyoming law to federal law.

We begin by acknowledging that every breach of a public contract is not actionable as a violation of constitutional rights. Therefore, the federal courts distinguish between "mere" contract rights and property rights created by contract. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1398 (3rd Cir.1991) (*quoting Yatvin v. Madison Metropolitan School Dist.,* 840 F.2d 412, 416 (7th Cir.1988)).

> Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection. "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *[Board of Regents of State Colleges v.] Roth,* 408 U.S. [564,] at 577, 92 S.Ct. [2701,] at 2709, [33 L.Ed.2d 548 (1972) ]; *Perry [v. Sindermann],* 408 U.S. [593,] at 602, 92 S.Ct. [2694,] at 2700, [33 L.Ed.2d 570 (1972) ] * * *. Federal law accordingly may differentiate between contractual rights. Our problem, then, is to determine what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment.

*San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County,* 825 F.2d 1404, 1408–09 (9th Cir.1987). The relevant question becomes what was the state of the "clearly established" federal law in January of 1990 regarding the property interests of probationary public employees subject to dismissal "for reasonable cause."

The Supreme Court of the United States recognized in *Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92, that an Ohio statute created a protected property interest in public employment for "classified" civil servants, a form of permanent employment or tenure. Under an Ohio statute, "classified civil service employees" were entitled to retain their positions "during good behavior and efficient service" and could not be dismissed except for "misfeasance, malfeasance, or nonfeasance in office." *Id.* The *Loudermill* court directed due process rights must be accorded to certain employees. "The **tenured** public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495 (emphasis added).

In *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir.1984), the court applied Oklahoma law to determine that a property interest in public employment was created by an employee handbook. The handbook specifically provided that a **permanent** employee could not be discharged without cause. *Id.* The limitation of both *Loudermill* and *Vinyard* is that these and similar precedents do not examine what impact, if any, a probationary status has on the creation of a protected property interest.

The United States Court of Appeals for the Tenth Circuit explored the relationship of a probationary status to the creation of a protected property interest during the relevant time period. In *Richardson v. City of Albuquerque,* 857 F.2d 727, 732 (10th Cir. 1988), the court determined that a probationary police cadet failed to establish a legitimate claim of entitlement to her position. The cadet was hired under an implied in fact contract of employment formed by a city ordinance and personnel regulations. *Id.* at 731. Under terms of the implied contract, probationary cadets could be terminated if their performance did not meet "required work standards" or if the cadet was found "not to be [a] suitable employee." *Id.* at 732. The court held, under these terms, that probationary employees had a lesser expectation

of continued public employment than permanent employees; therefore, no property interest was created. *Id.*

In *Sipes v. United States,* 744 F.2d 1418 (10th Cir.1984), the court held a probationary employee had no constitutionally protected property interest in his employment. The employee served "subject to satisfactory performance * * *." *Id.* at 1419. The employee's probationary status precluded any right to continued public employment. *Id.* Similarly, in *Walker v. United States,* 744 F.2d 67, 68 (10th Cir.1984), the court held that a probationary employee was not entitled to due process protection because the employee had no "legitimate claim of entitlement" to public employment.

■ A reasonable public official in January of 1990 attempting to relate established federal law in the Tenth Circuit to the factual circumstances involved in Abell's dismissal would not have anticipated that she had a constitutionally protected property interest in public employment. A probationary employee of the executive branch of state government was not considered a tenured public employee whose due process rights were protected under *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. The language of the personnel rules which explained that a probationary employee could be dismissed for performance which "is not found to be satisfactory" invites a factual correlation between the standards imposed on probationary employees in *Richardson,* 857 F.2d at 732 and *Sipes,* 744 F.2d at 1419. A reasonable public official reading those precedents would have believed that a probationary employee had no "legitimate claim of entitlement * * *" to continued public employment. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Outside of governing Tenth Circuit precedents, Abell argues two other circuits and a federal district court had recognized a protected property interest for a probationary public employee when the employer's rights were restricted by language requiring cause for dismissal. In *Perri v. Aytch,* 724 F.2d 362, 366 (3rd Cir.1983), the United States Court of Appeals for the Third Circuit ruled a probationary employee of the Pennsylvania state court system had a protected property interest in her employment. The personnel regulations of the court provided that a probationary employee was hired for a term of six months and could be dismissed "for just cause only." *Id.* at 365. The court noted the unusual nature of this status: "On its face, these regulations inexplicably appear to guarantee that a probationary employee, just as a permanent employee, will not be terminated except for just cause." *Id.* at 366. Therefore, the court held the regulations created a protected property interest for six months of probationary employment. *Id.*

In *Bueno v. City of Donna,* 714 F.2d 484, 492 n. 8 (5th Cir.1983), the United States Court of Appeals for the Fifth Circuit recognized a probationary employee subject to termination for "just cause" had a constitutionally protected property interest in continued public employment. Under the personnel rules of the City of Donna, Texas, permanent and probationary employees could only be terminated "for just cause." *Id.* As a result, the court held terminated city employees were entitled to federal due process protection. *Id.* at 493.

The Federal District Court decision which Abell relies upon, *Marvin v. King,* 734 F.Supp. 346 (S.D.Ind.1990), was actually decided in March of 1990, two months after Abell was dismissed. Marvin was a probationary fire fighter in Muncie, Indiana who challenged a pension board's decision to deny benefits. Under Indiana law, a probationary fire fighter could only be terminated if work performance was found "not to be satisfactory." *Id.* at 354. The court ruled that this standard placed a sufficient substantive limitation on the discretion of the employer to create a property interest in probationary employment for one year. *Id.* at 360.

Importantly, the court also reaffirmed a prior ruling that Marvin could not maintain causes of action under 42 U.S.C.S. § 1983 against individual defendants because they had qualified immunity. *Marvin,* 734 F.Supp. at 360. The court declared that it was "obvious" that at the time Marvin was terminated, the law was not clearly established that a probationary fire fighter would have a protected property interest in con-

tinuing public employment. *Id.* To this extent, we agree with the *Marvin* court.

The decisions in *Perri, Bueno* and *Marvin* effectively disclose the absence of clearly established law upon which a reasonable Wyoming public official in 1990 could have relied. There simply was no governing decision of the Supreme Court of the United States, no governing decision of the United States Court of Appeals for the Tenth Circuit, and no governing decision from this court declaring a constitutionally protected property interest in continued public employment would be found for a probationary employee, even one subject to dismissal "for reasonable cause." *Perri* and *Bueno* are fact specific decisions which lack the sufficiently extraordinary circumstances necessary to clearly establish a principle of law. *Seiter*, 858 F.2d at 1177.

A public official does not have to anticipate future developments in the law prior to taking a discretionary action. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The question of whether a probationary employee of the executive department of Wyoming government possessed a constitutionally protected property interest in public employment was open at the time Dewey dismissed Abell. *Mitchell*, 472 U.S. at 535, 105 S.Ct. at 2820.

Furthermore, Dewey's actions do not reflect that he acted with malice. *Hunter*, ___ U.S. at ___, 112 S.Ct. at 536. *See Abell*, 847 P.2d at 44, Thomas, J., concurring in part and dissenting in part. Dewey carefully inquired about the meaning of a nolo contendere plea to determine if it resulted in a felony conviction. Dewey also acted in accord with the personnel rules after consultation with legal counsel. *See V-1 Oil Co.*, 902 F.2d at 1488 (noting reliance upon the advice of counsel may permit an extraordinary circumstance exception to the rule that qualified immunity defense fails where a government official violates a clearly established right). The fact that Dewey's actions turned out to be incorrect does not deprive him of qualified immunity.

## IV. CONCLUSION

Abell has failed to carry her burden of establishing that at the time of the challenged conduct, the law was clearly established that a probationary employee subject to dismissal "for reasonable cause" had a constitutionally protected property interest in public employment. Therefore, we hold that Dewey has qualified immunity to the cause of action brought by Abell under 42 U.S.C.S. § 1983.

The district court's grant of summary judgment in favor of the State on the cause of action for breach of contract is reversed and remanded in accord with *Abell*, 847 P.2d at 41, 43.

We withdraw the inconsistent portion of our prior opinion and affirm the district court's grant of summary judgment in favor of Dewey.