2017 NOV 13 AM 11: 53


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74952-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ROSE I. GORDON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: <u>November 13, 2017</u> |
| | ) | |

SPEARMAN, J. — A valid waiver of a defendant's <u>Miranda</u>[1] rights depends on the totality of the circumstances present during the interrogation. A trial court's finding of waiver will be affirmed if it is supported by substantial evidence. A claim of double jeopardy will be sustained only if the jury was not properly instructed and the State failed to make it manifestly apparent to the jury that it was not seeking multiple punishments for a single act. In this case, Rose Gordon challenges her convictions for multiple child sex offenses, contending that a language barrier prevented her from knowingly, intelligently and voluntarily waiving her <u>Miranda</u> rights and that her right against double jeopardy was violated because she was convicted on two counts that were not based on

_____

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

separate and distinct acts. But the finding of waiver is supported by substantial evidence and the jury was made well aware that the two counts at issue must be based on separate and distinct acts. We affirm.

## FACTS

Gordon was born in Tonga in 1980 and moved to the United States in 2006. In 2008, Gordon gave birth to a daughter, C.H. Gordon met Ricky Gordon on a dating website in March 2013 and married him approximately a month later. In 2014, Gordon and Ricky[2] had a son, R.G.

On November 7, 2014, the Snohomish County Sheriff's Office served a search warrant on the Gordon's home. The warrant was based on a tip from the Federal Bureau of Investigation (FBI) that the Gordons were dealing in depictions of minors engaged in sexually explicit conduct. When police entered the home, C.H. was naked and sitting on the couch with Gordon and Ricky. Both Gordon and Ricky were arrested and transported to the jail. A "'keep separate'" provision was imposed so that Gordon and Ricky could not be near each other while being booked into the jail. Verbatim Report of Proceedings (VRP) (1/27/16) at 444.

After Gordon was booked, Detective Peter Teske and Deputy Jeff Ross met with her in a private interview room. When the officers introduced themselves, Gordon immediately began talking about her understanding of why she was there. Detective Teske interrupted Gordon to advise her of her <u>Miranda</u>

---

[2] We refer to Ricky Gordon by his first name for clarity.

rights. He read them to her from a printed form, pointing to each word so she could follow along. Gordon agreed to waive her <u>Miranda</u> rights, both orally and in writing. Detective Teske then began recording the interview and obtained a second <u>Miranda</u> waiver from Gordon on the recording.

The interview was conducted entirely in English. Gordon admitted she and Ricky had touched C.H.'s vagina on multiple occasions "to see what she would do." Clerk's Papers (CP) at 211. Gordon stated that Ricky had performed oral sex on C.H. and that they told C.H. to touch Gordon's vagina and Ricky's penis. Gordon stated she once inserted her finger into C.H.'s vagina but that C.H. complained that it hurt and so she stopped. Gordon indicated the depth of the penetration to Detective Teske by pointing to the first knuckle of her own finger. Gordon stated that she and Ricky did these things to "train her now and teach her the right thing. . . ." CP at 213.

A forensic investigation of Gordon's and Ricky's phones revealed large numbers of photographs and videos of C.H. naked or engaging in sexual acts. One photograph, taken on April 19, 2014, showed C.H. sitting with Ricky on a couch and touching his erect penis. Another photograph, taken on June 7, 2014, depicted C.H. performing oral sex on Ricky.

The State charged Gordon in a fifteen-count information with crimes against C.H., acting either as a principal or an accomplice. These included first degree rape of a child, occurring between October 1, 2013 and November 7,

-3-

2014 (count I), and first degree child molestation, occurring on April 19, 2014 (count III).

At a CrR 3.5 hearing, the trial court read a transcript of Gordon's police interview and also listened to the audio recording of the interview. The trial court found that Gordon "was articulate when expressing herself" and "was not halting." CP at 134. The trial court also found that while Gordon's sentence structure "was not the same as those who have been educated ... the structure was not far removed from many others who have testified" and that Gordon "appeared to be substantially fluent in the English language." CP at 134-35. The trial court concluded that Gordon's ability to communicate in English "was not an impediment to her ability to make a knowing and voluntary waiver" of her Miranda rights. CP at 135.

At trial, Gordon, who had the assistance of a Tongan interpreter throughout the proceedings, requested to testify in English. Gordon did not dispute that she had performed sexual acts with C.H. and had taken photographs or videos of other sexual acts involving C.H. Rather, Gordon contended that she did these things under duress. She testified that Ricky knew that she was not a United States citizen and threatened to have her deported if she did not do what he said. Gordon also testified that Ricky hit her and burned her hands with an iron. Gordon claimed that she did not tell Detective Teske any of this because she encountered Ricky while being booked into the jail and Ricky motioned to her to keep quiet.

-4-

In closing argument, the deputy prosecutor informed the jury that they could convict Gordon on count I based on: (1) the June 7 photograph of C.H. performing oral sex on Ricky, or (2) Gordon's admission to Detective Teske that she digitally penetrated C.H.

> Now, this image also supports count one which is rape of a child in the first degree.
> . . .
>
> [Y]ou really have two choices on count one on how you wish to show – if you wish to conclude the State has proven this. There's either of those images. There was oral sex happening. She instructed her to do that under accomplice liability.
> The second choice would be that if you recall in her interview she told the detectives that she digitally penetrated [C.H.] with her finger up to her knuckle. Detective Teske told you that she demonstrated to him it was up to her knuckle, that she screamed out it hurt. Remember she said, no, no, no, I don't like it. There's that.

VRP (2/2/16) at 810-11. The deputy prosecutor instructed the jury that count III was based on the April 19 photograph depicting C.H. touching Ricky's penis.

> Count three is a count of child and child molestation in the first degree. You will see that in the second-to-last slide depicting [C.H.] touching Mr. Gordon's penis. That is, again, another accomplice liability charge. Mrs. Gordon is in the series of photos. You will see from the metadata within minutes of each other, within seconds from each other. She tells you from the interview that she is the one that instructs her to do this.

VRP (2/2/16) at 819-20.

The jury rejected Gordon's duress defense and returned guilty verdicts on every count except for count XV. Gordon appeals.

## DISCUSSION

### Miranda *Waiver*

Gordon contends that the trial court erred in admitting her statements to Detective Teske. She argues that her English language skills were not sufficient to execute a knowing, voluntary and intelligent waiver of her Miranda rights. We disagree.

A custodial statement is admissible if police advised the defendant of his or her constitutional rights and the defendant knowingly, voluntarily and intelligently waived those rights. Miranda, 384 U.S. at 479. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). A defendant's language barrier is an important consideration in determining whether a waiver is valid. State v. Teran, 71 Wn. App. 668, 672-73, 862 P.2d 137 (1993).

We review a trial court's decision after a CrR 3.5 hearing to determine whether substantial evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. State v. Broadaway, 133 Wn.2d 118, 130-31, 942 P.2d 363 (1997). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Halstien, 122 Wn.2d 109, 129, 857 P.2d 270 (1993). We defer to a trial court's assessment of credibility. State v. Hill, 123 Wn.2d 641, 646, 870 P.2d 363 (1994).

Here, the totality of the circumstances demonstrates that Gordon understood her <u>Miranda</u> rights and voluntarily, knowingly, and intelligently waived them. When Detective Teske went over the rights with Gordon, she responded in English that she understood them. She did not express any confusion or difficulty understanding, nor did she ask any questions. In contrast, later in the interview, when Gordon was not sure she was using the word "masturbate" correctly, she stopped to ask Detective Teske if her usage was correct.

The remainder of the interview after the waiver also demonstrates Gordon's comprehension. Gordon responded appropriately and accurately to questions regarding her address, phone number and date of birth. When Detective Teske asked questions in English about Gordon's relationship with Ricky and her conduct with C.H., Gordon's answers were responsive. In fact, Gordon appeared eager to explain her actions and to emphasize that she and Ricky loved C.H., that they believed they were acting in her best interest, and that they did not compel her to participate in sexual activity by force. Gordon talked freely during the interview with little prompting. Both Detective Teske and Deputy Ross testified that they had no concerns regarding Gordon's comprehension. The trial court did not err by finding that Gordon voluntarily, knowingly, and intelligently waived her <u>Miranda</u> rights.

<u>Double Jeopardy</u>

Gordon contends that her convictions on count I and count III violated double jeopardy. She argues that because the charging periods for the two

counts overlapped, the jury could have convicted her of rape of a child based on the same incident that formed the basis for the child molestation conviction. But because it was manifestly apparent to the jury that the State was not seeking multiple punishments against Gordon for the same act, there was no double jeopardy violation.

The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. U.S. CONST. AMEND. V; WASH. CONST. art. I, § 9; State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). We review a potential double jeopardy violation de novo. Mutch, 171 Wn.2d at 662.

In State v. Land, 172 Wn. App. 593, 295 P.3d 782 (2013), we recognized that when a sexual act involves oral-genital contact only, if done for the purposes of sexual gratification, that conduct may constitute both rape of a child and child molestation. When both are charged, the jury instructions must require that the rape of a child and child molestation counts be based on separate and distinct acts. Land, 172 Wn. App. at 600-01. The absence of such language presents the potential for double jeopardy. Land, 172 Wn. App. at 600-01. But there is no double jeopardy violation if, considering the evidence, arguments, and jury instructions in their entirety, it is "'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense. . . .'" Mutch, 171 Wn.2d at 664 (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2009)).

Here, the instructions for count III did not include an instruction that the conduct must have occurred on an occasion separate and distinct from that of count I. Nevertheless, there was no double jeopardy violation. The State clearly elected the evidence on which it was relying for count I: either C.H. performing oral sex on Ricky on June 7 or Gordon's digital penetration of C.H. And the State identified the evidence forming the basis for count III: the incident of C.H. touching Ricky's penis on April 19. The State reviewed the exhibits depicting each incident with the jury so that there could be no confusion regarding which incident supported which count. There was no suggestion that any act of oral-genital contact was the basis for count III. Nor did the State suggest that the jury could use the same incident to support more than one count. Based on the evidence, argument, and instructions, it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense.

Affirmed.

_____
Spearman, J.

WE CONCUR:

_____          _____
                                       Appelwick, J.